Ann Williams, Petitioner v. Commissioner.
Williams v. Commissioner
Docket No. 87012.
United States Tax Court
T.C. Memo 1963-30; 1963 Tax Ct. Memo LEXIS 313; 22 T.C.M. (CCH) 116; T.C.M. (RIA) 63030; February 4, 1963
*313 Andrew F. Slaby, Esq., for the petitioner. Melvin E. Pearl, Esq., and William J. Wise, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioner and additions to tax for negligence for the indicated years as follows: Addition to tax
Sec. 6653(a),
Year
Deficiency
I.R.C. 1954
1957 $220
$11.00
1958
149
7.45
The issues for determination are the correctness of the respondent's action (1) in determining the amount of income received by petitioner as tips during 1957 and 1958 and (2) in determining that the petitioner was liable for an addition to tax under section 6653(a) of the Internal Revenue Code of 1954 for each of the taxable years. Findings of Fact Some of the facts have been stipulated and are found accordingly. During 1957 and 1958 the petitioner resided in Milwaukee, Wisconsin, and filed her income tax returns for those years with the district director in that city. During 1957 and thereafter until some undisclosed time in September 1958, the petitioner was employed as a waitress at *314 Como's Restaurant, sometimes hereinafter referred to as Como's, which is located at 618 North 27th Street in Milwaukee, is on Highway 41, a main highway artery of the city, and is about one-half block south of Wisconsin Avenue, the main street of the city. Early in 1957 Como's was remodeled and is an attractive restaurant in a highly commercialized and industrialized area of the city. After remodeling, the restaurant during 1957 and 1958 consisted of a lobby, a main dining room with approximately 40 booths and tables, a cocktail lounge, and a private dining room known as the Sorrento Room. The restaurant had a seating capacity for meal service of approximately 150 at a time. Como's current menu consists primarily of Italian and American food with prices ranging from $2.25 for a spaghetti dinner to $5.50 for a T-bone steak dinner. The same general kinds and types of foods currently served were served during 1957 and 1958 and at prices approximately 10 percent less than current prices. In addition to serving food at tables, Como's also sold food to carry out. Sales of food to carry out comprised approximately 1 percent of its total food sales during 1957 and 1958. During those years *315 the sales of pizza comprised approximately 10 percent of Como's total food sales. In 1957 and 1958 Como's also had a bar from which beverages were served at tables. During 1957 and 1958 Como's was open for business 7 days a week. It served a noon meal and served dinner from 5 p.m. until 10 p.m. At 10 p.m. the menu was changed from a dinner to an a la carte menu and continued as such until closing time at 1:30 a.m. The patronage of the restaurant consisted of business executives, professional people, office workers, salesmen, factory workers, and some, but not many, students. The petitioner worked the evening hours, that is, from 5 p.m. until 1:30 a.m., for five evenings a week. Her evenings off were Wednesday and Thursday. Her rate of pay, as that of all other Como waitresses, during 1957 and 1958 was 70 cents per hour. From his analysis of the sales records of Como the respondent determined that during 1957 and 1958 the sales of Como from 5 p.m. until closing were approximately twice that of the day sales. Evening sales during the weekend, that is Friday through Sunday, were larger than other evenings of the week. Except for weekends during 1957 and 1958, the dining room during *316 the evenings was divided into six stations for serving purposes and one waitress was assigned to each station. Usually a station consisted of two booths and form three to five tables. During weekends the dining room was divided into nine stations and one waitress was assigned to each station, thereby reducing the number of tables served by each waitress. All waitresses were rotated equally at all stations in the restaurant, including rotation for banquet or private party work and carryout sales. In this regard the petitioner was merely part of the average and was accorded no special advantageous or disadvantageous treatment. Petitioner, as all other waitresses at Como's, had the same usual amount of cleaning and setting-up work to do both at the time of arriving at work and prior to leaving the restaurant at closing time. As a consequence no waitress was required to do any more of such work than any other waitress. On weekends during 1957 and 1958 Como's usually employed a busboy and also at other times during the week if there was sufficient business to warrant employing one. It was the custom at Como's for waitresses to give the busboy 10 percent of their tips. Como's required *317 waitresses to pay the bills of customers whom they had served but who walked out without paying their bills. Such walkouts were rate and the amounts the petitioner was required to pay therefor were small. All of the waitresses at Como's during 1957 and 1958 were good waitresses. Petitioner was conscientious and alert while on duty and she had customers who particularly requested her services when dining at Como's, as did other waitresses at Como's who had customers who requested their services. The petitioner was at least an average waitress in the group of waitresses at Como's. The petitioner kept no books or records of her income received as tips during 1957 and 1958. Neither did she keep any books or records of the amount of food and liquor served by her at Como's or the amount of carryout orders packaged by her there during such years, nor are there any books or records available showing the amounts of such items during those years. Further, the petitioner did not keep any records respecting customers she served at Como's who walked out without paying their bills or the amounts she was required to pay Como's with respect to such bills. The following is a statement as stipulated *318 by the parties of Como's total food sales, total liquor sales at tables, total hours worked by all waitresses at Como's, and total hours worked by petitioner at Como's during 1957 and 1958: 1957
1958
Total food sales
$175,128.50
$161,029.30
Total liquor sales at
tables
43,781.10
39,879.82
Total hours worked by
all waitresses
28,717
26,590
Total hours worked by
petitioner
2,005
1,425
In her income tax return for 1957 the petitioner reported $1,403.85 as salary received during that year and $140 as income received as tips during the year. In her income tax return for 1958 she reported $1,465.83 as the total salary received during that year from Como's and from Towne Room, which was the restaurant in Milwaukee at which she worked during the latter part of 1958, and reported $146 as income received from tips during the year. In so reporting her income from tips the petitioner used 10 percent of the amounts she reported as salary. Tipping at Como's during 1957 and 1958 ranged from nothing to 15 percent of the customer's bill, or more, dependent upon the quality of service and the quality of the food. Upon making a survey of tipping habits in Milwaukee, *319 Wisconsin, the respondent determined that the custom was to tip a percentage of the food and liquor bill. He determined that the tipping custom for persons who dined at Como's during 1957 and 1958 was to tip on the average 15 percent of the customer's bill, varying above or below such percentage depending on the quality of the service and the food. Because the petitioner did not maintain any records as to her income from tips the respondent concluded that her income from that source should be computed on the basis of the total amount of the sales of food and liquor she served at Como's each year and taking 10 percent thereof as the amount of her tips for the respective years. The foregoing 10 percent was arrived at by respondent on the basis of his survey from which he concluded that the average tip at Como's represented 15 percent of the customer's bill and that an allowance of one-third thereof should be made on account of carryout sales in which no tips were received, payments made by petitioner to the busboy, and payments made by petitioner of the bills of customers who after being served walked out without paying their bills. Because of the unavailability of records showing *320 the amount of the sales of food and liquor served by petitioner during 1957 and 1958, the respondent employed the following formula to obtain the amounts thereof: 1. Ascertain the total of the total amount of Como's food sales and the total amount of its sales of liquor served at tables during the respective years. 2. Divide the total so ascertained for each of the years by the number of hours worked by all waitresses during the respective years to ascertain the average amount of food and liquor served per average waitress hour. 3. Multiply the quotients thus obtained for the respective years by the number of hours the petitioner worked during such years to ascertain petitioner's total sales for each year. An application of the foregoing formula discloses total sales of food and liquor served by petitioner of $15,278.10 during 1957 and $10,758.75 during 1958. Computing 10 percent of such amounts as petitioner's income from tips results in $1,527.81 for 1957 and $1,075.87 for 1958. In determining the deficiencies the respondent determined that petitioner's income from tips was $1,360 for 1957 and $967 for 1958. The record is silent as to the computation made by respondent to *321 arrive at the amounts of $1,360 and $967. However, such amounts are 8.901 percent of $15,278.10 and $10,758.75, respectively. Opinion The petitioner testified that following her employment at Como's in 1958 she thereafter in that year was employed at the Towne Room where she also received tips, the amount of which is not disclosed. However, so far as we are able to ascertain, the respondent's determination as to petitioner's tips for 1958 relates solely to her tips while working at Como's in that year. Accordingly and since neither of the parties herein has taken a different position, we conclude that no tips received by petitioner in 1958 while working at the Towne Room are here involved. Although the respondent determined that petitioner received taxable income as tips in the amount of $1,360 during 1957 and $967 during 1958, he requests that we find that petitioner's income from such source was $1,527.81 during 1957 and $1,075.87 during 1958. Since the respondent has not moved to increase the deficiencies determined by him, we limit our consideration herein to the amounts determined by him. The petitioner takes the position on brief that we should find that she had no income *322 from tips during 1957 and 1958 in excess of the amounts reported by her in her income tax returns for those years, $140 and $146, respectively, or otherwise we should hold that "a more equitable formula be substituted for that used by" respondent. However, the petitioner does not suggest what the contents of such a formula would be, or what amounts its application herein would produce. We know of no formula, equitable or otherwise, which properly may be applied generally as a rule of thumb to ascertain the correct amount received by a waitress from tips or from any other source. The ultimate question here, as in all like cases, is the correctness of the amounts determined by respondent as income received from tips viewed in the light of the record as a whole and not viewed merely in the light of a formula he may have used in arriving at the amounts determined. Dorothy L. Sutherland, 32 T.C. 862 (1959), involved the income tax liability for 1953, 1954, and 1955, of a waitress who, like the petitioner here, did not keep any records of the income received by her as tips. There we pointed out that every taxpayer is required by law to report in his income tax return, fully *323 and honestly, every item of gross income received, and must maintain adequate records of some kind which will show to him and to the Commissioner the amount of income of all types received in each year; that if the taxpayer does not keep any records to show the full amount of every kind of income received in a taxable year, or if such records as are kept do not clearly show the entire income, the Commissioner is authorized to make a computation of the amount of income in accordance with such method as in his opinion does clearly show the full amount of income received; that a computation of income so made by the Commissioner is presumptively correct under law and the taxpayer has the burden of proving that it is erroneous; and that such burden is not discharged by the taxpayer's estimates of income or his unsubstantiated, uncorroborated, and self-serving testimony that the amounts reported in his return are correct. The petitioner did not keep any record of the tips she received during the years here involved. Some of petitioner's testimony is that her tips actually were less than the amounts reported in her income tax returns. Other of her testimony is that on average there was *324 one night a week when she received tips totaling $5 and that for the other four nights her total tips were less, ranging down to 35 cents for some nights. Other of her testimony is to the effect that her tips for the years in question amounted to from 3 to 5 percent of the bills of the customers served by her. On the basis of 5 nights a week, or 40 hours per week, the evidence shows the petitioner worked 50 weeks during 1957 and 35 weeks in 1958. According to her testimony her minimum tips were not less than $640 a week or a total minimum of $320 for 1957 and $224 for 1958. On the basis of the average amount of liquor and food sales of Como's per waitress the amount at food and liquor served by petitioner in 1957 was $15,278.10 in 1957 and in 1958 was $10,758.75. Applying to those amounts the minimum and maximum percentages of 3 percent and 5 percent stated by petitioner gives the following amounts: 3 percent
5 percent
1957
$458.34
$763.90
1958
322.76
537.94
In view of the foregoing we are of the opinion that on the basis of the above testimony of petitioner her tips were substantially in excess of $140 and $146 she reported for 1957 and 1958, respectively. *325 As a consequence we are unable to find that she correctly reported the tips she received during those years. Apparently for the purpose of establishing the improbability, if not the impossibility, of her tips having been in the amounts determined by respondent, the petitioner, relying on certain of her testimony and other portions of the record, contends on brief that Como's was "a pure pizza house" and makes other contentions to the effect that the dining room was maintained in a filthy condition, the floor thereof was of a character productive of accidents; that she was required nightly to do set-up, cleaning and clean-up work totaling 2 to 3 hours with respect to which no tips were involved; that the amount of sales of carryout food which she packaged and with respect to which no tips were received exceeded the amount of the sales of food served by her to customers at tables; that she was required to pay the bills of customers she had served and who walked out without paying their bills; that she paid 10 percent of the tips she received, or from 20 cents to 35 cents nightly, to the busboy when one was on duty which generally was on weekends; that during the months of January, *326 February, and March 1958 Como's was remodeled which created a condition detrimental to the receipt of tips during that period; that 47 waitresses were employed at Como's during each of the years in question and that the turnover of waitresses was such as to disclose bad working and tipping situations there; that because of her age, 45 in 1957 and 46 in 1958, she was less active physically and was unable "to give youth to her customers" as the younger waitresses were, and that those conditions militated against her ability to obtain larger and more frequent tips as did the younger waitresses there; and that her services at Como's were terminated by her discharge on account of her being slow. We have found that during 1957 and 1958 Como's sales of pizza constituted approximately 10 percent of its total food sales. That fact viewed in the light of the record as a whole is an insufficient basis for designating Como's as "a pure pizza house." Como's was remodeled early in 1957 and we are unable to find in the record a basis for concluding that the process of remodeling produced a substantial adverse effect on either the amount of Como's sales during the period of remodeling or on the *327 tipping situation at Como's during that period. Nor are we able to find that in either 1957 or 1958 Como's dining room was maintained in a filthy condition or that the condition of the floor thereof was of a character productive of accidents either to the help employed there or to customers. Although the testimony of the petitioner is to the effect that nightly she was required to do 2 to 3 hours of work with respect to which no tips were received, there is evidence to the contrary in the record. However, the 2 to 3 hours as testified to by petitioner included set-up work which concededly facilitated the actual serving of customers and the clean-up work which followed such serving. Other work done by the petitioner, such as cleaning in and about the restaurant, was intermittent and does not appear to have totaled the amount of time indicated by petitioner's testimony. The record is clear that petitioner was not called upon to do any more work than the other waitresses. Respecting the bills of customers who walked out after being served and before making payment, the petitioner testified that during 1957 and 1958 she paid bills of a total of two customers, the total amount of which *328 was $4. Although the petitioner testified to paying the busboy 10 percent of her tips, there is other evidence to the effect that usually petitioner did not want to pay anything to the busboy and that many times she did not pay him anything at all. Although the petitioner testified that at Como's during 1957 and 1958 there was "a terriffic turnover with respect to waitresses," and the parties subsequent to the trial stipulated that the total number of waitresses employed by Como's in 1957 was 47 and that the total number employed in 1958 also was 47, the stipulation as well as the remainder of the record is silent as to the extent, if any, that the waitresses employed in 1958 were other than those employed in 1957. In such a situation the record does not afford a basis for concluding that the turnover of waitresses at Como's was such as to disclose bad working and tipping situations there. Respecting the petitioner's contention that the amount of sales of carryout food which she packaged, and with respect to which no tips were received, exceeded the amount of the sales of food served by her to customers at tables, we have found that in 1957 and 1958 Como's sales of food to be carried *329 out [were] approximately 1 percent of its total sales. Further the evidence shows that carryout orders were rotated among all waitresses and not assigned to one waitress or a small number of the waitresses. In view of the foregoing it is difficult to see how the situation complained of by petitioner would occur with a substantial degree of frequency. In any event the record shows that the cook packaged a portion of the pizza orders to be carried out. The petitioner testified that in September 1958 her employment at Como's was terminated by her discharge and that at that time she had worked 2 1/2 years there. Petitioner stated that she did not know the reason for discharge. However, to place a reason in the record, the petitioner used her only witness, Marie Kraatz. In 1957 and 1958 Marie was 73 and 74 years of age, respectively. She was employed as a waitress at Como's during the years involved herein and she and petitioner worked the same hours there. Marie and petitioner were the oldest two waitresses employed at Como's during the years in question. Although not having been shown to have had any authority with respect to or other connection with the employment or discharge of *330 waitresses, and without showing how she acquired such knowledge, Marie testified that petitioner was discharged from her employment at Como's because she (petitioner) was "too slow." Since the record does not indicate otherwise, it would appear that Marie's employment at Como's continued after the termination of the petitioner's services there. Although petitioner and Marie testified to the opinions that waitresses younger than petitioner, because of their youth, were able to obtain larger and more frequent tips than petitioner, we think it is significant that petitioner did not offer the testimony of any of such younger waitresses respecting the tips received by them during the years here involved. In the absence of an explanation of the petitioner's failure in this respect we can only conclude that such testimony would not have aided petitioner here. Marie, as did petitioner, testified to having received small amounts of tips during the years involved. However, Marie admitted she never kept a complete record of the full amounts of her tips for either year and that after 1958 she burned the partial and incomplete records which she had kept. The manager of Como's at the time of *331 the trial herein and who has been manager since 1952 testified that he considered all of the waitresses employed there during 1957 and 1958 including the petitioner to be good waitresses. Marie testified that the petitioner "is a fine waitress and gave fine service" and that petitioner had customers who would come in and ask for her, "a lot" of whom liked nice service and "a lot" of whom did not care whether the service was nice. The petitioner testified that she considered herself a good waitress in 1957 and 1958. In our opinion and we have so found as a fact all of the waitresses at Como's during 1957 and 1958 were good waitresses and petitioner was at least an average waitress within the group. Dividing the amounts determined by respondent as petitioner's income received as tips during 1957 and 1958, $1,360 and $967, by the average amounts of food and liquor sales during 1957 and 1958 at Como's per waitress, $15,278.10 and $10,758.75, respectively, discloses that the amounts determined by respondent as income from tips represent 8.9 percent of such sales for the respective years. On the basis of the tipping custom at Como's during the respective years and on the basis of the *332 remainder of the record we are unable to find that petitioner received any lesser amounts of income from tips during the respective years than the amounts determined by respondent for such years. In reaching the foregoing conclusion we recognize that such amounts may not be the exact amounts of tips received by petitioner during the years in question but in the situation presented we consider to be applicable here the following statement contained in Mendelson v. Commissioner, 305 F. 2d 519 (C.A. 7, 1962), affirming a Memorandum Opinion of this Court, certiorari denied 371 U.S. 877 (1962). Obviously, where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much. It is sufficient if the method employed produces a result which is substantially correct. All taxpayers, including the one here involved, by failure to keep records of their income assume the hazard that they may be called upon to pay a tax based on an income which cannot be determined to a certainty. Such a situation, however, arises from the fault of the taxpayer and not that of the Commissioner. As was *333 said in Dorothy L. Sutherland, supra, taxpayers who receive income as tips but do not keep written records of the tips are "extremely negligent" in failing to keep such records. Since the petitioner did not keep any record of the tips she received during the years in question and since she received income from tips greatly in excess of the amounts she reported in her returns for those years, we sustain the respondent's determination of additions to tax provided in section 6653(a) of the 1954 Code. Decision will be entered for the respondent.