ALLEN J. AND HELEN THIEL, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thiel v. Commissioner
Docket No. 5288-76.
United States Tax Court
T.C. Memo 1977-387; 1977 Tax Ct. Memo LEXIS 53; 36 T.C.M. (CCH) 1573; T.C.M. (RIA) 770387; November 7, 1977, Filed Helen Thiel, pro se. Ralph Jones and Clay Freed, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge J. M. Gussis pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF *54 THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years 1972 and 1973 in the respective amounts of $682.66 and $710.88 and also determined additions to tax under the provisions of section 6653(a) in the amounts of $34.13 and $35.54 in the years 1972 and 1973, respectively. The issues are (1) whether respondent correctly determined the amount of tip income received by petitioner Helen Thiel in 1972 and 1973; and (2) whether petitioners are liable for the addition to tax in 1972 and 1973 for negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). [3]
*55 FINDINGS OF FACT Petitioners were residents of Idaho Falls, Idaho at the time of the filing of the petition herein. They filed joint Federal income tax returns for the years 1972 and 1973. Helen Thiel (hereinafter petitioner) was employed as a waitress in 1972 and 1973 in a restaurant located in Idaho Falls, Idaho. The establishment (which was opened in 1963) included a bar, a lounge, a dining room and a coffee shop. The coffee shop was open 24 hours a day while the dining room was kept open as a general rule only for lunch and dinner. The coffee shop included a counter and tables and had a capacity of about 140 persons while the dining room had a somewhat larger capacity. The restaurant advertises extensively and, with its scenic location, attracts tourists and salesmen as well as the established local clientele. Petitioner worked in the coffee shop during the period here relevant and her regular work schedule was generally from 6:00 p.m. to 2:00 a.m. The coffee shop was divided into six work stations which were served by four waitresses on weekdays and five waitresses on weekends. Petitioner did not keep any record of the tips received by her in 1972 and 1973. Petitioner *56 reported total compensation from her employment as a waitress in 1972 and 1973 in the respective amounts of $3,223.95 and $3,333.40, which totals included (in addition to wages) the tip income reported by petitioner to her employer in the respective amounts of $291 and $272. Respondent computed petitioner's tip income for the years 1972 and 1973 by first determining the total amount of credit card sales made by the restaurant in August 1972 and October 1972 which indicated, in addition to the total purchase, the designated tip by the customer. Based upon these amounts, a percentage of tips to credit card sales was determined (13.97 percent) which percentage was reduced to 12.5 percent after allowing for amounts paid by the waitresses to busboys. Respondent then divided the total amount of restaurant sales by the total number of waitresshours worked during each of the years 1972 and 1973 to obtain the amount of sales per hour for those years ($16.36 in 1972 and $16.50 in 1973). Respondent then computed the amount of tips per hour by multiplying the sales per hour in each year by the percentage tip rate of 12.5 percent ($2.04 in 1972 and $2.06 in 1973). Multiplying the hours worked *57 by petitioner as a waitress in 1972 (1,833 hours) and in 1973 (1,801 hours) by the tips per hour as computed above ($2.04 in 1972 and $2.06 in 1973) respondent determined petitioner's total tip income for 1972 and 1973 in the respective amounts of $3,739.32 and $3,710.06 which totals (when compared to the tip income actually reported by petitioner) indicated an understatement of tip income by petitioner in 1972 and 1973 in the respective amounts of $3,457.48 and $3,442.56. [4]
OPINION In Sutherland v. Commissioner, 32 T.C. 862 (1959) this Court stated that "[if] a taxpayer does not keep any records to show the full amount of every kind of income received in a taxable year, or if such records as are kept do not clearly show the entire income, the Commissioner is authorized to make a computation of the amount of income in accordance with such method as in his opinion does clearly show the full amount of income received." [Fn. ref. omitted.] Here, the respondent *58 has employed a formula (described in our findings of fact) to determine the amount of tip income actually received by petitioner while employed as a waitress in the years 1972 and 1973. Petitioner has the burden of proving that respondent's determination is incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. While we believe that the formula used by respondent is a reasonable one, we are nonetheless persuaded that on the basis of the record some adjustment is necessary in the application of the formula. We will consider some of the factors which we feel require an adjustment in respondent's computation. Respondent derives his initial tip percentage figure from the tips shown on credit card sales for the months of August and October 1972. These credit card sales for the two month period are in the total amount of $2,125.09 while the total sales for 1972 were in the amount of $1,078,229.24, suggesting that a tip rate based purely upon credit card sales might not be truly representative in this particular restaurant. Nor are we fully persuaded that the tips shown on credit card sales accurately reflect the *59 tipping practices of the various categories of customers who, as the record shows, patronized the restaurant. Petitioner testified that certain categories of customers, including students from local schools and bus loads of tourists, simply did not tip when they came to the coffee shop. She emphasized that many students simply bought coffee and used the coffee shop as a meeting place, or they frequented the coffee shop after local sports events and as a rule demonstrated a marked predilection for the less glamorous items on the menu. It also appears from the testimony that after midnight (when petitioner was regularly on duty) the nature of the restaurant's clientele shifted appreciably to the non-tipping variety. Finally, while it appears that petitioner worked only in the coffee shop during the period here relevant the computation used by respondent is based upon the credit card sales and the total sales by the waitresses working in all sections of the restaurant, i.e., the dining room and the bar as well as the coffee shop. We have carefully considered all of the evidence in our effort to reach a fair approximation of petitioner's correct tip income for 1972 and 1973. *60 See Mendelson v. Commissioner, 305 F.2d 519 (7th Cir. 1962) affirming a Memorandum Opinion of this Court. We conclude, on the basis of this record, that an effective tip rate of 8 percent (rather than 12.5 percent), should be used in computing the total tip income received by petitioner in 1972 and 1973 under respondent's formula.[5]
Petitioner did not keep any records of her tip income while employed as a waitress in 1972 and 1973. In view of this unexplained failure to keep adequate records petitioner was manifestly negligent. We must, therefore, sustain the respondent's determination of additions to tax under section 6653(a) for the years 1972 and 1973. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. ↩
2. The Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable under these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
3. In her petition filed with this Court the petitioner has made numerous allegations, including several constitutional allegations, which in many respects reflect similar allegations made by petitioners in a group of 14 cases which, together with the present case, were set for trial in Pocatello on July 18, 1977. The 14 cases were consolidated and this Court in a Memorandum Opinion filed on August 22, 1977 in Giles v. Commissioner, T.C. Memo. 1977-278↩ discussed various allegations made by the petitioners in their respective petitions in said 14 cases. We feel that such discussion is equally applicable here and we see no useful purpose in repeating such discussion.
4. Respondent determined in the notice of deficiency that the understatements of tip income were in slightly lesser amounts, i.e., $3,448.32 and $3,438.06 in the years 1972 and 1973, respectively.↩
5. This effective tip rate of 8 percent takes into consideration the amount (as determined by respondent) which petitioner paid to busboys.↩