GARY G. LONG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Long v. Commissioner
Docket No. 5307-79.
United States Tax Court
T.C. Memo 1980-221; 1980 Tax Ct. Memo LEXIS 362; 40 T.C.M. (CCH) 531; T.C.M. (RIA) 80221; June 25, 1980, Filed *362 Gary G. Long, pro se. Dianne I. Crosby, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $2,509.46 in petitioner's Federal income tax for the year 1975 and an addition to tax of $125.47 under section 6653(a), Internal Revenue Code of 1954. [1]
The two issues we must decide are: 1. Did petitioner understate his tip income in 1975 by $10,301.68 from his employment as a waiter at Caesar's Palace Hotel and Casino? 2. Is petitioner liable for an addition to tax under section 6653(a) for negligent or intentional failure to keep adequate records of his tip income? FINDINGS OF FACT Some of the facts were stipulated and are so found. Gary G. Long (petitioner) was a resident of Las Vegas, Nevada, when he filed his petition in this case. During 1975 the petitioner worked 1,846 hours as a waiter in the Circus Maximus Room of Caesar's Palace Hotel and Casino in Las Vegas, Nevada. It is the showroom where famous entertainers frequently *363 perform. The Circus Maximus has a daily dinner show and a cocktail show. Work stations are assigned daily on a rotation basis. The usual minimum charge is $15 per person. For about two and a half years before he became a waiter at the Circus Maximus the petitioner was a busboy.His father, who was also a waiter there, helped him obtain his job as a waiter. Two persons worked together as a team in serving the tables at the Circus Maximus. Each team pooled its tips and paid out to busboys about 15 percent of the total tips received. In 1975 the petitioner's partner usually handled the money and at the end of the show would divide it with petitioner. About 35 to 40 customers would be served by petitioner and his partner at each show. Some customers paid by credit cards and others paid cash. Sometimes customers did not leave tips. Petitioner does not have a daily record of the tips he received in 1975. He claims that the records he kept have been lost or destroyed. According to the records of Caesar's Palace, the petitioner declared tips received in 1975 in the total amount of $2,768. Pursuant to a tip income analysis project performed by respondent with respect to Caesar's *364 Palace for the years 1974 and 1975, the tip income of waiters and waitresses in the Circus Maximus was reconstructed. The computation of the net hourly tip rate for 1975 was as follows: A. Tip Percentage Analysis
A. Credit Card Charges Analyzed
$ 27,593
(Including Sales Tax & Cabaret Tax)
B. Total Tips On Above Sales
3,633
C. Average Tip Percentage
13.2%
B. Tip Rate Computation - Waiters/Waitresses
A. Total Room Sales -
13,608,908
(Including Sales Tax & Cabaret Tax)
B. Less: 35% (For Stiffs And Other Variables)
4,763,118
C. Net Sales Subject To Tip Percentage
8,845,790
D. Tip Percentage
13.2%
E. Tips
1,167,644
F. Less: 16.67% Payouts To Busboys, Bartenders, Etc.
194,646
G. Net Tips To Waiters/Waitresses (Adjusted Tips)
972,998
H. Divided By: Hours Worked - Waiters/Waitresses
137,260
I. Net Hourly Tip Rate
7.08
Effective Rate: Percentage Of Adjusted Tips To
Total Billings (Adjusted)
7%
To calculate petitioner's tip income, respondent used a formula which utilized information taken from a random sample of 52 days in 1974 and 7 days in 1975. Respondent's formula is divided into two components. First, a tip percentage is *365 calculated, and, second, a tip rate per hour is calculated. Respondent calculated the tip percentage by using credit card and room charge sales, which included the sales and cabaret taxes, in proportion to the tips given on these sales. Respondent discarded any sales in the sample if no tip was shown on the charge slip. By using the total sales of Caesar's Palace, including cabaret and sales taxes, adjusting for non-tippers and using the tip percentage, respondent calculated the gross tips received by all waiters in the Circus Maximus for the years 1974 and 1975.After adjusting for tips given to busboys and bartenders, the net tips were divided by the total waiter hours worked and the result equalled respondent's rate of tips per hour for each of the years 1974 and 1975. As set forth above, respondent applied the pertinent data obtained from the Circus Maximus and arrived at a tip percentage of 13.2 percent for 1975. By using the tip percentage factor times the gross sales of the Circus Maximus respondent calculated the gross tips.After reducing this amount by 16.67 percent, the percentage paid out to busboys and bartenders, respondent arrived at the tips allocable to the waiters. *366 This amount was then divided by the total waiter hours which resulted in an average rate of tips per hour of $7.08 for 1975. Using this hourly rate times the 1,846 hours worked by petitioner, respondent determined that the petitioner received tip income of $13,069.68 for 1975. ULTIMATE FINDINGS OF FACT 1. Petitioner understated his tip income for 1975 in the amount of $10,301.68. 2. Part of the underpayment of tax for the year 1975 was due to petitioner's negligent or intentional disregard of the income tax rules and regulations. OPINION In these circumstances the respondent's use of an indirect method to test and calculate the petitioner's tip income was proper and reasonable. Comparable methods have been approved by the courts. Meneguzzo v. Commissioner, 43 T.C. 824, 831-834 (1965); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); Mendelson v. Commissioner, 305 F.2d 519, 523 (7th Cir. 1962), affirming T.C. Memo. 1961-319; McQuatters v. Commissioner, T.C. Memo. 1973-240. Respondent's reconstruction of the tip income received by petitioner in 1975 shows a substantial disparity between *367 the amount determined ($13,069.68) and the amount reported ($2,768) by petitioner.We reject the petitioner's contention that he received such a small sum in tips for 1,846 hours of work. Even by his own admission, the "average tip" was "usually 10%." Consequently, we hold on this record that the petitioner had unreported tip income of $10,301.68 for the year 1975. Petitioner was negligent in substantially understating his tip income and in failing to keep adequate records. Therefore, the addition to tax determined by respondent under section 6653(a) is sustained. Meneguzzo v. Commissioner, supra at 836; Schroeder v. Commissioner, supra at 34. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩