ALLAN G. and LAVADA D. SHIEMAN, ET. AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Shieman v. Commissioner
Docket Nos. 641-79, 4533-79, 4534-79, 7559-79, 7560-79, 7561-79, 7563-79, 7564-79, 7565-79, 7566-79, 7567-79.
United States Tax Court
T.C. Memo 1980-427; 1980 Tax Ct. Memo LEXIS 155; 41 T.C.M. (CCH) 47; T.C.M. (RIA) 80427; September 25, 1980, Filed *155 Victor T. Schaub, for the petitioners. Woodford G. Rowland, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' income taxes for 1975 and additions to tax as follows: Addition to Tax
(Petitioners)
Deficiency
(Sec. 6653(a)) [2]
Allan G. and Lavada
$ 509.14
$25.45
D. Shieman
Martha L. Ackerman
216.00
10.80
Russell J. Munsell and
555.00
27.75
Karole M. Munsell
Emma Howard
1,310.00
0
Patrice D. Walsh
1,746.00
87.30
Gailey A. Browning
1,573.00
78.65
Arlene Ludtke
1,796.00
89.80
Marlene Ann Yerkins
1,492.00
74.60
Donna Louise Lindley
1,792.00
89.60
Peter Gibney and
1,674.00
83.70
Shirley Gibney
Lynn Rieke and Patricia
J. Rieke
811.00
40.55
These cases have been consolidated for the purposes of trial, briefing, and opinion. The only issues for decision are whether petitioners understated their 1975 income from tips and whether petitioners (except Emma Howard) are liable for section 6653(a) additions to tax. FINDINGS OF FACT Some of *156 the facts have been stipulated and are so found. All petitioners were residents of California at the time their respective petitions were filed herein. Each of the female petitioners was a waitress at Lazio's Restaurant (hereinafter Lazio's) in Eureka, Calif., during all or part of 1975. Lazio's is a family restaurant located on Humboldt Bay six blocks from Eureka's business district in an area dominated by the fishing industry. It is open daily (except major holidays) for lunch and dinner. In 1975, complete dinners ranging in price from about $4.00 to about $10.00 were offered, as well as many a la carte items. A smaller selection at reduced prices was offered at lunch. Liquor, beer, and wine are served. Lazio's contains a cocktail lounge which functions mainly as a waiting area for dining space, a retail counter at which fresh seafood and canned items are sold, and a dining room which sat 84 in 1975. No reservations are taken. Parking space is provided, but there is no valet parking. A hostess-cashier usually seats patrons, but it is not uncommon for diners to seat themselves. Diners can view the docks or the fish plant while eating. Customers must pay at the cash *157 register whether using cash or credit cards, waitresses may not collect payment of checks. Tourists visiting northern California's picturesque redwood country are a large part of Lazio's clientele. Some of the tourists arrive in large bus groups and many are families on camping vacations. Tourism is seasonal, and Lazio's does its best business during the summer months. The rest of Lazio's customers are primarily local residents. Fishermen who frequent the restaurant and often keep running tabs leave minimal tips. Employees at an adjacent fish plant (commonly owned with Lazio's) can get meals in the restaurant's kitchen at a low fixed price per meal. Receipts from these meals are collected in the kitchen and no tips are paid. In 1975, Lazio's received a three star "Excellent" rating in the Mobil Travel Guide and had a reputation for good seafood--a fact which was highly advertised. In the summer, patrons usually wait one and one-half hours for dinner and 45 minutes for lunch. Service is fast with a table turnover rate of three for dinner in peak tourist season. A waitress at Lazio's usually works 32 hours per week in four days. Shifts are split and rotate; therefore, *158 each waitress works both the busiest hours and the slowest ones. Waitresses, rather than the cocktail lounge hostess, serve most of the beer and wine in the dining room. Each waitress keeps a record of her own tips. The usual procedure is for a waitress to put the tips in her pocket and record the daily total on an envelope. Any tips charged on credit cards are collected in cash from the cashier at the end of the day and similarly recorded. At week's end, daily envelope totals are transferred to a permanent weekly time card which the restaurant uses for calculating the tip income to be shown on Forms W-2. Usually the daily envelopes are not retained, and none were produced at trial. Tips are not shared with the bus help. During 1975, Lazio's sales were as follows: Food (taxable)
$787,463
Food (nontaxable; carry out)
15,641
Liquor
110.417
Beer and wine
54,614
Retail counter
307,938
Total 1975 sales
$1,276,073
Lazio's credit card sales for 1975 were $266,220 or approximately 21 percent of total sales. Respondent calculated the total amount of tips each petitioner received in 1975 according to the following formula: 1. Total 1975 Food Sales
Total 1975 waitress hours
1975 sales per waitress hour
2. 1975 sales per waitress hour x Hours P worked
in 1975
P's 1975 sales
3. P's 1975 sales x "Tip percentage"
P's 1975 tip income
*159 Total 1975 food sales were $766,988, [3] and total 1975 waitress hours were 18,089. Thus 1975 sales per waitress hour were $42.40. The number of hours each petitioner worked in 1975 was stipulated. Respondent used a tip percentage of 13 percent which he determined by calculating the average tip left on credit card charges, including only credit card charges on which tips were shown, for 25 randomly chosen days in 1975. The resulting figure of 13.13 percent was rounded to 13 percent. On brief, respondent conceded that reduction to 12 percent may be proper. The correct tip percentage is 10 percent. Petitioners actually reported tip income for 1975 which ranged from 1.43 percent to 3.35 percent of their individual sales. In his statutory notices of deficiency respondent increased petitioners' 1975 taxable incomes by including additional tip income and asserted section 6653(a) additions to tax. OPINION The only issues for decision are whether petitioners understated their 1975 income from tips and whether petitioners (except Emma Howard) are liable for *160 section 6653(a) additions to tax. Petitioners concede that respondent is entitled to reconstruct their 1975 income from tips by use of a formula. See Meneguzzo v. Commissioner,43 T.C. 824 (1965). However, they contend that the proper tip percentage to be used in respondent's formula is 3 percent. [4] Respondent contends that 13 percent is reasonable and that, in no event, should a percentage less than 12 percent be used. Based on all the facts and circumstances, we find 10 percent to be the proper figure. *161 Respondent arrived at a tip percentage of 13 by calculating the average tip left on credit card charges, including only credit card charges on which tips were shown, for 25 randomly chosen days in 1975. While the method used by respondent is not entirely unreasonable, we are nonetheless persuaded that on the basis of the record some adjustment is necessary. Lazio's credit card sales for 1975 were only approximately 21 percent of total 1975 sales indicating that a tip rate based purely on credit card sales might not be truly representative in this particular restaurant.[5] Nor are we fully persuaded that tips charged on credit cards accurately reflect the tipping practices of the various categories of customers who patronized the restaurant. While we did not find much of petitioner Patrice D. Walsh's testimony to be credible, we do believe her testimony that local fishermen and tourist bus groups were poor tippers and rarely used credit cards. Moreover, respondent's calculation of a 13 percent tip rate made no allowance for customers who left no tip at all. [6] See Mendelson v. Commissioner,305 F.2d 519 (7th Cir. 1962), affg. a Memorandum Opinion of this Court, *162 cert. denied 371 U.S. 877 (1962). Respondent also failed to take into account the nature of Lazio's as a casual, fast service, high turnover restaurant where customers paid at the cash register and waitresses did not have a great opportunity to cultivate extremely large tips. [7]
While acknowledging that exactitude is impossible, we have carefully considered all the evidence in an effort to fairly approximate petitioners' correct 1975 income from tips.Based on all the facts and circumstances, we conclude that a tip rate of 10 percent (rather than 13 percent) should be used in computing petitioners' tip income under respondent's formula. We now turn to the section 6653(a) additions to tax for negligence or intentional disregard of rules and regulations. Petitioners reported tip income for 1975 which ranged from 1.43 percent to 3.33 percent *163 of their individual sales--a clear understatement for which they offered no reasonable explanation. Therefore, we sustain respondent's imposition of the additions to tax. See Enoch v. Commissioner,57 T.C. 781 (1972). To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Martha L. Ackerman, docket No. 4533-79; Russell J. Munsell and Karole M. Munsell, docket No. 4534-79; Emma Howard, docket No. 7559-79; Patrice D. Walsh, docket No. 7560-79; Gailey A. Browning, docket No. 7561-79; Arlene Ludtke, docket No. 7563-79; Marlene Ann Yerkins, docket No. 7564-79; Donna Louise Lindley, docket No. 7565-79; Peter Gibney and Shirley Gibney, docket No. 7566-79; and Lynn Rieke and Patricia J. Rieke, docket No. 7567-79.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Total food sales of $787,463 minus $20,475 allocable to meals served to fish plant employees in the kitchen.↩
4. Petitioners arrived at 3 percent by totaling all June-December 1975 credit card charges (whether they included tips or not); excluding 24 percent as allocable to retail counter charges; totaling all June-December 1975 charged tips; and, dividing total charged tips by total charged sales (less 24 percent). The resulting 5.89 percent was rounded to 5 percent and lowered to 3 percent on the bases that credit card tipping was higher than cash tipping; that tourists, who tipped higher than other customers, used credit cards more; and that Lazio's did not attract an affluent clientele. There are a number of fallacies in petitioners' calculation, but they will not be analyzed in detail. Respondent's determination is presumed correct and petitioners bear the burden of proving it in error, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure↩; therefore, we use it as our starting point.
5. See Thiel v. Commissioner,T.C. Memo. 1977-387↩. 6. Compare Schroeder v. Commissioner,40 T.C. 30↩ (1963), in which respondent included charges where no tip was included in arriving at a tip rate based on charge records. 7. See Griggs v. Commissioner,T.C. Memo. 1971-33↩.