FRANCOIS HASCOUET AND EUGENIE HASCOUET, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hascouet v. Commissioner
Docket Nos. 5634-77, 5635-77, 5636-77
United States Tax Court
T.C. Memo 1982-261; 1982 Tax Ct. Memo LEXIS 486; 43 T.C.M. (CCH) 1347; T.C.M. (RIA) 82261; May 11, 1982. Martin I. Menack, for the petitioners. Martha Sullivan and Arnold J. Gould, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: § 6653(a) [2]
Year
Deficiency
Addition to tax
Francois Hascouet and
1972
$ 1,789.18
$ 89.46
Eugenie Hascouet
1974
1,735.36
86.77
Jean Beneat and Georgette
1972
1,653.43
82.67
Beneat
1973
1,502.74
75.14
1974
1,906.73
95.34
Joseph Caccioppo
1972
2,018.01
100.90
1973
3,284.29
164.21
1974
4,227.10
211.36
*487 Respondent has conceded that none of the petitioners are liable for any addition to tax pursuant to section 6653(a) for their 1973 and 1974 taxable years. The two issues remaining for our decision are: (1) whether petitioners understated their gross income by failing to report a portion of their income from tips during the years here in issue, and (2) whether petitioners are liable for the addition to tax under section 6653(a) for their 1972 taxable years. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Francois Hascouet and Eugenie Hascouet filed joint Federal income tax returns for the taxable years 1972 and 1974 with the Internal Revenue Service Center at Holtsville, New York. At the time their petition in this case was filed, the Hascouets were residents of Elmhurst, New York. Jean Beneat and Georgette Beneat filed joint Federal income tax returns for the taxable years 1972 through 1974 with the Internal Revenue Service Center *488 at Holtsville, New York. At the time of the filing of their petition in this case, the Beneats resided in Jackson Heights, New York. Joseph Caccioppo filed his Federal income tax return for the taxable years 1972 through 1974 with the Internal Revenue Service Center at Holtsville, New York. At the time his petition in this case was filed, Caccioppo was a resident of Elmhurst, New York. Francois, Jean, and Joseph were all employed as waiters at La Cote Basque Restaurant in New York, New York during the years here in issue. Their incomes were derived in the main from a small salary paid by the restaurant augmented by tips received from customers whom they served. The restaurant accepted only two forms of payment from its diners--cash or house charge. Conventional credit cards, such as VISA or American Express, were not accepted. When payment was made in cash, the restaurant collected only what was charged for food and drinks. Any tips were paid by the customer directly to the service provider. Charge sales were handled differently. The bill was totalled and a stamp was placed on the back of the bill containing three boxes in which the patron could designate the amount *489 of the gratuity to be paid to the maitre d', the captain, and the waiter. Since the restaurant eventually collected the entire billing from the customer, including the amount alloted for tips, the restaurant assumed responsibility for paying the designated sums to its employees. Therefore, after the restaurant had an opportunity to tally all of the charge receipts, a representative of the waiters (generally the shop-steward or his assistant) would pick up the total tip income and distribute it to those entitled. [3]
None of the petitioners maintained records of the tips which they received during the years in question. The following chart indicates the amount of salary and tips from the restaurant reported by each waiter on his Federal income tax return: Taxable
Salary
Tips
Total
Petitioner
Year
Reported
Reported
Reported
Francois Hascouet
1972
$ 3,641.00
$ 6,298.85
$ 9,939.85
1974
4,124.85
7,632.85
11,757.70
Jean Beneat
1972
3,527.10
4,787.10
8,314.20
1973
3,859.20
6,114.25
9,973.45
1974
4,133.25
7,165.45
11,298.70
Joseph Caccioppo
1972
3,640.60
4,888.75
8,529.35
1973
3,835.50
5,006.70
8,842.20
1974
4,151.80
5,712.80
9,864.60
*490 In the statutory notice of deficiency, respondent determined petitioners' income based upon a formula utilizing the books and records of the restaurant. The sales journal kept by La Cote Basque contained compilations made from the charge bills, and thus respondent was able to ascertain both total charge sales and total tips to waiters (since as mentioned above the stamp placed on the bills allowed the customers to state the waiter's tip separately from those of the maitre d' and the captain) for each year. From these figures, the percentage of charged tips for waiters to charged food and drink was computed. The tip percentage was reduced by 15 percent for busboys' tips, whom the waiters paid out of their tips. The resultant percentage was then applied to total charged food and drink and to total cash sales in order to arrive at total waiters' tips on charged and cash sales. The total waiters' tips were compared to total waiters' salaries. The resultant tip to salary ratio was 3.5:1 for 1973 and 3.8:1 1974. These ratios were then applied to a waiter's salary to determine his total tips for 1973 and 1974. As respects 1972, tips earned per day were computed by dividing total waiters' *491 tips by total waiter man days with the resulting figure of $ 58.28 per day. The number of days each waiter worked during 1972 was then multiplied by the daily rate of tips to determine his total tips for that year. Using the above-described method, respondent determined that petitioners had unreported tip income as follows: Hascouet
Beneat
Caccioppo
1972
$ 7,018.13
$ 8,704.72
$ 8,515.65
1973
7,392.95
8,417.00
1974
8,056.68
8,549.90
10,079.00
Following issuance of the notice of deficiency, respondent revised his determination to take into account the possibility that tips on cash sales of food and drink were lower than charged tips. Consequently, the tip percentage for charge sales (derived as outlined above) was reduced by approximately 1 1/2 percent to derive a tip percentage for cash sales. Both tip percentages were reduced by 15 percent for busboys' tips. The tip percentage for charged food and drink sales was applied to derive total waiters' tips on charged food and drink sales; the tip percentage for cash sales was applied to cash food and drink sales to derive total waiters' tips on cash sales. Total waiters' tips on charged and *492 cash food and drink sales combined were then used to recompute daily tips ($ 54.20) and the tips to salary ratios (3.3:1 and 3.6:1 for 1973 and 1974, respectively). Respondent's revised determination of petitioners' unreported tip income is as follows: [4]
*493 Hascouet
Beneat
Caccioppo
1972
$ 6,085.85
$ 7,759.90
$ 8,119.25
1973
6,620.75
7,648.90
1974
7,216.61
7,723.55
9,248.64
OPINION This is one of a series of cases brought by waiters at La Cote Basque Restaurant in New York City challenging respondent's assertions of deficiencies due to alleged unreported income from tips. Tips, of course, constitute compensation for services rendered and are, therefore, includable in gross income. Section 61(a); section 1.61-2(a)(1), Income Tax Regs.; Roberts v. Commissioner,176 F.2d 221 (9th Cir. 1949), affg. 10 T.C. 581 (1948). In each case, the waiters reported their salaries plus an additional sum representing tips received during the course of their employment duties. Respondent, however, believes that these reported tips comprise but a portion of the tips actually received by the waiters. The question put to us is thus one of amount rather than taxability: whether petitioners received tip income in excess of the amounts reported by them. Each of the petitioner-waiters admitted during their testimony that they failed to keep any records during the years in issue which *494 would establish the amount of their tip income. It is well established that where a taxpayer fails to keep records required by section 6001, the Commissioner has statutory authority pursuant to section 446 to make a computation of the amount of petitioners' tips for the years involved in accordance with a method which in his opinion clearly reflects income. Meneguzzo v. Commissioner,43 T.C. 824, 831, 833 (1965); Schroeder v. Commissioner,40 T.C. 30, 33 (1963); Sutherland v. Commissioner,32 T.C. 862, 866-867 (1959). Under the facts before us, the burden of proof rests with the taxpayers to show any inaccuracies in the method of reconstruction selected by the respondent. Welch v. Helvering,290 U.S. 111 (1933); Mendelson v. Commissioner,305 F.2d 519 (7th Cir. 1962), affg. a Memorandum Opinion of this Court; Rule 142, Tax Court Rules of Practice and Procedure.
In our opinion, petitioners have not successfully challenged the reliability of the method established by respondent for approximating their overall tip income. In the first place, the end result--tips ranging from 14 percent on cash *495 sales during 1972 to a high of 16.23 percent on charge sales during 1974--seems to accord with common tipping customs in the largest cities. We thereore find this figure to have been reasonable. [5]
Petitioners also claim that respondent improperly failed to reduce the estimated percentage of tips by the correct proportions of tips payable to the captain and the maitre d'. This argument ignores completely the way in which the tip computations were made. The figure for tips on charge sales was derived from the charge documents on which the customer separately stated the tips for the waiter, the captain, and the maitre d'. The percentage of tips on cash sales was established by reducing the tip percentage for charge sales (which itself excluded the tips for the captain and maitre d') by approximately 1 1/2 percent. Thus tips attributable to personnel other than the waiters did not influence respondent's results. As to the methodology itself, petitioners' main objection seems to be *496 that the sales figures included carryout food sales and receipts from catered events from which they received no tips. [6] Petitioners refer us to Bassett v. Commissioner,T.C. Memo. 1963-10, affd. sub. nom. Anson v. Commissioner,328 F.2d 703 (10th Cir. 1964), where we reduced respondent's determination of gross "tippable" sales because it failed to take into account "carryout" business constituting 10 percent of the total business and upon which the waitresses received no tips. *497 The testimony on this point was conflicting. The petitioner-waiters all told of private parties being held outside the restaurant on the average 2 or 3 times a month. The bills from these affairs were said to vary from as high as two or three thousand dollars to as low as several hundred. In addition to these catered events, they claimed that 2 or 3 times a month customers would order the food to go and would take it home where they would serve their guests themselves. The bills for this carryout service would average $ 900 to $ 1,000. Individual items such as pate' or chocolate cake were also said to have been sold in large quantities. The waiters each denied having received any tips from any of these sources. On the other hand, the two revenue agents who audited La Cote Basque testified that they came across no mention of outside sales in going over the restaurant's books, although they acknowledged that there may have been such sales. Most significantly, both agents testified that when they interviewed the waiters, none at that time mentioned anything of this nature. Petitioners have not carried their burden of establishing that there were non-tip sales of more than *498 a deminimis amount, or indeed provided any basis upon which we might estimate what amount of such sales reflected cash sales as opposed to credit sales. This is crucial because to the extent these additional sales were charged, any reduction we would make would increase petitioners' unreported income by increasing the percentage for tips for charge sales, thus in turn increasing the percentage of tips on cash sales. We must also decide whether the petitioners are liable for the additions to tax under section 6653(a). We find petitioners to have been negligent in failing to keep records as required by law. Since petitioners have presented no evidence to justify their conduct, we hold them liable for the additions to tax. Meneguzzo v. Commissioner,43 T.C. 824, 836 (1965); Schroeder v. Commissioner,40 T.C. 30, 34 (1963). Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herein: Jean Beneat and Georgette Beneat, docket No. 5635-77; Joseph Caccioppo, docket No. 5636-77.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise indicated.↩
3. There was substantial disagreement at trial over how this distribution was effected. A revenue agent testified for the Government that the tips were pooled and distributed equally among all those who had worked the night in question. The petitioners testified that they were paid the tips actually left for them by the patrons.↩
4. The final tips to salary ratio and daily tip figures were computed as follows: 1972
1973
1974
(1)
Charge sales
$ 647,582.00 $ 575,713.60 $ 560,562.00 (2)
Tip on charge sales
15.57%
16.18%
16.23%
(3)
Less 15% (busboys)
2.39%
2.43%
2.43%
(4)
Effective tip on charge
sales
13.18%
13.74%
13.80%
(5)
Tips on charge sales
$ 85,728.16 $ 79,160.48 $ 77,357.56 (6)
Cash sales
$ 801,471.00 $ 842,763.05 $ 882,066.00 (7)
Tip on cash sales
14.00%
14.50%
14.50%
(8)
Less 15% (busboys)
2.10%
2.175%
2.175%
(9)
Effective tip on cash
sales
11.90%
12.325%
12.325%
(10)
Tips on cash sales
$ 95,375.05 $ 103,870.62 $ 108,714.63 (11)
Total tips
$ 181,103.21 $ 183,031.10 $ 186,072.19 (12)
Total waiters' salaries
$ 55,212.00 $ 51,786.00 (13)
Total waiter man days
3,341.00 (14)
Tips to salary ratio
(line 11 divided by line 12)
3.3:1 3.6:1 (15)
Waiters' daily tips
(line 11 divided by line 13)
$ 54.20 It should be noted that the percentage on line (4), when multiplied against line (1), yields a slightly lesser product for line (5) than is indicated by the chart. Respondent asserts that this discrepancy is explained by adjustments made to charge sales which were never reflected on the worksheets.↩
5. We find highly implausible the waiters' testimony at trial that their tips averaged 12 percent on charges and 10 percent on cash sales at this expensive New York City dining establishment.↩
6. Petitioners also object generally that the respondent failed to use proper sampling techniques in computing the applicable percentage of tips. However, they fail to detail any specific deficiencies. We note this method has been involved in prior cases before this Court in which we have sustained respondent's determinations. See, e.g., Meneguzzo v. Commissioner,43 T.C. 824 (1965); Rinaldi v. Commissioner,T.C. Memo. 1980-102 (involving a different waiter at La Cote Basque Restaurant). Obviously, where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much. It is sufficient if the method employed produces a result which is substantially correct. All taxpayers, including the ones here involved, by failure to keep records of their income assume the hazzard that they may be called upon to pay a tax based on an income which cannot be determined to a certainty. Such a situation, however, arises from the fault of the taxpayer and not that of the Commissioner. Mendelson v. Commissioner,305 F.2d 519, 523↩ (7th Cir. 1962).