Julius MENDELSON and Pearl Mendelson, his wife, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 13675.

United States Court of Appeals
Seventh Circuit.

July 17, 1962.

Andrew F. Slaby, Sydney M. Eisenberg, Milwaukee, Wis., for petitioners-appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Alec A. Pandaleon, Atty., Tax Division, U. S. Dept. of Justice, Lee A. Jackson, Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before DUFFY, SWYGERT and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This case is here on petition for review of a decision of the Tax Court sustaining in part deficiencies determined by respondent in income taxes due from the petitioners for the taxable years 1957 and 1958. Petitioners as husband and wife filed joint returns for those years. The failure to report income concerns only the wife, Pearl Mendelson, who will be referred to as the petitioner or taxpayer.

Respondent determined a deficiency of $638.43 for the year 1957, and an additional tax for negligence in the amount of $31.92, and a deficiency of $870.24 for the year 1958, and an additional tax for negligence in the amount of $43.51. The Tax Court reduced these deficiencies to $536.56 for 1957, and $717.23 for 1958, with negligence penalties of $26.83 and $35.86, respectively.

The unreported income from which such deficiencies were determined consisted of tips received by the taxpayer while serving as a waitress. She reported $200 as income from tipping for 1957, and no income from that source for 1958. Taxpayer worked as a waitress at the El Dorado Restaurant, in the City of Wauwatosa, County of Milwaukee, Wisconsin. She kept no records or books relative to the amount of income received during the taxable years. Under such circumstances, Sec. 446 of the Internal Revenue Code (Title 26 U.S.C.A. Sec. 446) provides:

> " * * * the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

Pursuant to this authority, respondent formulated a method by which he determined taxpayer's unreported income received from tips, with the deficiencies resulting therefrom.

The principal contention of petitioner is that respondent in determining her income from tips exceeded his legal limitations and that the method employed by him was arbitrary, excessive and without rational foundation. On first impression we thought there might be merit in petitioner's contention; however, after reading the entire transcript of the proceedings before the Tax Court, we are definitely of the conviction that the record furnishes ample support for its findings of fact, as well as its decision based thereon.

The fallacy of petitioner's attack on the findings is that her argument in the main is based upon petitioner's testimony which the Tax Court was not obligated to accept, particularly in view of her self-interest and the numerous contradictions between her testimony and that of other witnesses. It would unduly burden this opinion to recite the findings in detail. A brief summary will suffice.

The El Dorado was an attractive, high-class restaurant on two levels, the upper to seat the overflow from the lower, and occasionally for parties. It was well located, operated a bar, and served both food and drink. During the taxable years, petitioner worked as a part-time waitress. All of the waitresses were rotated to the various stations and all performed the same character of work. The tipping custom ranged from nothing to more than 15% of the customer's check, with less tipping by customers served on the upper level. During the baseball season, the restaurant served large groups of baseball fans whose expenditures for food were nominal, as well as their tips. In some instances, customers after having been served evaded the waitresses and left without tipping or paying their checks.

The employment arrangement was that waitresses were to give 10% of their tips to the hostess and 10% to the busboy. Occasionally, waitresses were assigned to the duties of hostess and to work in the restaurant's checkroom. Most of the tips received in the checkroom were turned over to the management.

From records of the restaurant respondent obtained a statement of the total food and liquor sales, the portion of liquor sales served at tables, total hours worked by all waitresses inclusive of service as hostess and in the checkroom, total hours worked by all waitresses exclusive of service as hostess and in the checkroom, including those worked by petitioner during the years in question. (The findings set forth the facts with reference to each of these items.)

No guest checks were available showing the amount of food and liquor served by the individual waitresses during the taxable years. There being no records kept, either by the taxpayer or by management, showing the amount of food and liquor served by taxpayer, respondent concluded that the taxable amount of tips received by her during the years in question should be determined in the following manner:

> "First, ascertain the total of the total food sales and the sales of liquor served at tables during the re-

spective years. Second, divide the totals for the respective years by the total number of hours worked by all waitresses as waitresses during the respective years to ascertain the average amount of food and liquor served per average waitress hour. Third, multiply the quotients thus obtained for the respective years by the number of hours the petitioner worked as waitress during such years to ascertain the total amount of food and liquor served by petitioner during each year. Finally, apply 12 percent to the total sales of food and liquor served by petitioner as thus ascertained so as to ascertain the amount of the petitioner's taxable tips for the respective years. In determining the foregoing amount of 12 percent, the respondent concluded from his survey that a rate of 15 percent was properly applicable to the food and liquor sales served at tables at El Dorado. However, because the waitresses were required to pay a portion of their tips to the hostess and bus boy, the respondent determined 12 percent as a proper percentage to use in order to determine the taxable amount of tips received by petitioner during the respective years."

From this formula, respondent determined that during 1957, petitioner received taxable income from tips in the amount of $3,123, and during 1958, taxable income from the same source in the amount of $3,470. These amounts were reduced by the Tax Court to $2,660 for 1957, and $2,900 for 1958.

■■ We agree with the Tax Court that the method used by respondent in determining petitioner's income from tips was within his statutory power and was not arbitrary, excessive or without rational foundation, as urged by the taxpayer. His method has the support of a presumption of correctness, and the petitioner had the burden of proving it to be wrong. Welch v. Helvering, 290 U. S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212.

Relative to the method employed by respondent, we can do no better than quote the reasoning of the Tax Court:

"As used by the respondent that method gives recognition to the fact that petitioner was an average waitress within her group in that it uses the average amount of food and liquor served by all waitresses per hour worked as waitresses during the respective taxable years as the basis for computing the amounts of food and liquor served by petitioner during such years and to which the respondent applied a rate of 12 percent to ascertain the petitioner's taxable income received from tips for those years. Except as to the foregoing rate of 12 percent, we are of the opinion that the respondent's method as applied to the petitioner is fair and reasonable."

■ Having determined the total sales of food and drink served by petitioner, it became essential to determine the percent thereof which she received as tips. As shown in the method employed by respondent, he used 12%, which was reduced by the Tax Court to 10%. We agree with the reasoning of the Tax Court in this respect, which is as follows:

"In arriving at the rate of 12 percent to be applied to the amount of food and liquor sales served by the petitioner, the respondent concluded that a rate of 15 percent was properly applicable to the food and liquor sales served at the tables at El Dorado for the purpose of determining tips. Since the waitresses were required to pay a portion of their tips to the hostess and bus boy, the respondent reduced the 15 percent to 12 percent. The evidence as to tipping at El Dorado shows that tipping ranged from nothing to 15 percent of the customer's check for good service, and to more than 15 percent where the service was exceptionally good. The evidence further shows that there was less tip-

ping by customers served in the upper level than by those served in the lower level and that tipping during the baseball season by large groups of baseball fans was nominal. There also is evidence that where a customer tipped 15 percent of his check when only food was served, he tipped only 12½ percent of his check when both food and liquor were served. Further, there is evidence that in some instances customers, after being served, evaded the waitresses and left without tipping or paying their checks and that in such instances the waitresses were required to pay the amount of the customers' checks. From our consideration of the foregoing we are of the opinion that an application of 10 percent, instead of 12 percent as applied by respondent, to the food and liquor sales served by petitioner during 1957 and 1958 will correctly approximate the taxable income received by petitioner in those years from tips. Accordingly we have found that during 1957 and 1958 the petitioner received taxable income from tips in the amounts of $2,660 and $2,900, respectively."

Petitioner complains that no account was taken of hours worked by her as hostess or checkroom girl. However, the time cards of the restaurant do not show any hours worked by her other than as a waitress and we think respondent was entitled to give credence to such records rather than accept petitioner's testimony. Petitioner also complains that respondent failed to take into consideration that tipping on the upper level of the restaurant was less, that there was only nominal tipping by baseball fans and that certain customers "skipped" without paying the check or leaving a tip. However, these matters were all taken into consideration by the Tax Court in reducing the tip percentage from 12 to 10.

■ Obviously, where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much. It is sufficient if the method employed produces a result which is substantially correct. All taxpayers, including the one here involved, by failure to keep records of their income assume the hazard that they may be called upon to pay a tax based on an income which cannot be determined to a certainty. Such a situation, however, arises from the fault of the taxpayer and not that of the Commissioner.

The decree on review is

Affirmed.