# UNITED STATES *v.* FIOR D'ITALIA, INC.

No. 01–463.   Argued April 22, 2002—Decided June 17, 2002

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, and GINSBURG, JJ., joined. SOUTER, J., filed a dissenting opinion, in which SCALIA and THOMAS, JJ., joined, *post*, p. 252.

*Assistant Attorney General O'Connor* argued the cause for the United States. With her on the briefs were *Solicitor General Olson, Deputy Solicitor General Wallace, Kent L. Jones, Bruce R. Ellisen,* and *Jeffrey R. Meyer.*

*Tracy J. Power* argued the cause for respondent. With her on the brief were *Thomas W. Power, Donald B. Ayer,* and *Elizabeth Rees.** 

JUSTICE BREYER delivered the opinion of the Court.

Employers must pay Federal Insurance Contributions Act taxes (popularly known as Social Security taxes or FICA taxes), calculated as a percentage of the wages—including the tips—that their employees receive. 26 U. S. C. §§ 3101, 3111, 3121(q). This case focuses upon the Government's efforts to assess a restaurant for FICA taxes based upon tips that its employees may have received but did not report. We must decide whether the law authorizes the Internal Revenue Service (IRS) to base that assessment upon its *aggregate estimate* of all the tips that the restaurant's customers paid its employees, or whether the law requires the IRS instead to determine total tip income by estimating each *individual employee's* tip income separately, then adding individual estimates together to create a total. In our view, the law authorizes the IRS to use the aggregate estimation method.

I

The tax law imposes, not only on employees, but also "on every employer," an "excise tax," *i. e.,* a FICA tax, in an amount equal to a percentage "of the wages . . . paid by him with respect to employment." § 3111(a) (setting forth basic Social Security tax); § 3111(b) (using identical language to set

---

*Briefs of *amici curiae* urging affirmance were filed for the American Gaming Association by *Robert H. Kapp, John G. Roberts, Jr.,* and *Frank J. Fahrenkopf, Jr.;* for the National Restaurant Association by *Peter G. Kilgore;* and for Patricia R. Guancial by *Lawrence R. Jones, Jr.*

forth additional hospital insurance tax). It specifies that "tips received by an employee in the course of his employment shall be considered remuneration" and "deemed to have been paid by the employer" for purposes of the FICA tax sections. § 3121(q). It also requires an employee who receives wages in the form of tips to report the amount of those tips to the employer, who must send copies of those reports to the IRS. 26 CFR § 31.6011(a)–1(a) (2001).

In 1991 and 1992 the reports provided to San Francisco's Fior D'Italia restaurant (and ultimately to the IRS) by the restaurant's employees showed that total tip income amounted to $247,181 and $220,845, in each year respectively. And Fior D'Italia calculated and paid its FICA tax based on these amounts. The same reports, however, also showed that customers had listed tips on their credit card slips amounting to far more than the amount reported by the employees ($364,786 in 1991 and $338,161 in 1992). Not surprisingly, this discrepancy led the IRS to conduct a compliance check. And that check led the IRS to issue an assessment against Fior D'Italia for additional FICA tax.

To calculate the added tax it found owing, the IRS used what it calls an "aggregate estimation" method. That method was a very simple one. The IRS examined the restaurant's credit card slips for the years in question, finding that customers had tipped, on average, 14.49% of their bills in 1991 and 14.29% in 1992. Assuming that cash-paying customers on average tipped at those rates also, the IRS calculated total tips by multiplying the tip rates by the restaurant's total receipts. It then subtracted tips already reported and applied the FICA tax rate to the remainder. The results for 1991 showed total tips amounting to $403,726 and unreported tips amounting to $156,545. The same figures for 1992 showed $368,374 and $147,529. The IRS issued an assessment against Fior D'Italia for additional FICA taxes owed, amounting to $11,976 for 1991 and $11,286 for 1992.

After paying a portion of the taxes assessed, the restaurant brought this refund suit, while the IRS filed a counterclaim for the remainder. The restaurant argued that the tax statutes did not authorize the IRS to use its "aggregate estimation" method; rather, they required the IRS first to determine the tips that each individual employee received and then to use that information to calculate the employer's total FICA tax liability. Simplifying the case, the restaurant agreed that "[f]or purpose[s] of this litigation," it would "not dispute the facts, estimates and/or determinations" that the IRS had "used . . . as a basis for its calculation" of the employees' "aggregate unreported tip income." App. 35. And the District Court decided the sole remaining legal question—the question of the *statutory authority* to estimate tip income in the aggregate—in Fior D'Italia's favor.

The Court of Appeals affirmed the District Court by a vote of 2 to 1, the majority concluding that the IRS is not legally authorized to use its aggregate estimation method, at least not without first adopting its own authorizing regulation. In light of differences among the Circuits, compare 242 F. 3d 844 (CA9 2001) (case below) with *330 West Hubbard Restaurant Corp.* v. *United States,* 203 F. 3d 990, 997 (CA7 2000), *Bubble Room, Inc.* v. *United States,* 159 F. 3d 553, 568 (CA Fed. 1998), and *Morrison Restaurants, Inc.* v. *United States,* 118 F. 3d 1526, 1530 (CA11 1997), we granted the Government's petition for certiorari. We now reverse.

II

An "assessment" amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court. See, *e. g., United States* v. *Janis,* 428 U. S. 433, 440 (1976); *Palmer* v. *IRS,* 116 F. 3d 1309, 1312 (CA9 1997); *Psaty* v. *United States,* 442 F. 2d 1154,

1160 (CA3 1971); *United States* v. *Lease,* 346 F. 2d 696, 700 (CA2 1965). We consider here the Government's authority to make an assessment in a particular way, namely, by directly estimating the aggregate tips that a restaurant's employees have received rather than estimating (and then summing) the tips received by each individual employee.

The Internal Revenue Code says that the IRS, as delegate of the Secretary of Treasury,

> "is authorized and required to make the inquiries, determinations, and *assessments* of all taxes . . . which have not been duly paid . . . ." 26 U. S. C. § 6201(a) (emphasis added).

This provision, by granting the IRS assessment authority, must simultaneously grant the IRS power to decide *how* to make that assessment—at least within certain limits. And the courts have consistently held that those limits are not exceeded when the IRS *estimates* an individual's tax liability—as long as the method used to make the estimate is a "reasonable" one. See, *e. g., Erickson* v. *Commissioner,* 937 F. 2d 1548, 1551 (CA10 1991) (estimate made with reference to taxpayer's purchasing record was "presumptively correct" when based on "reasonable foundation"). See also *Janis, supra,* at 437 (upholding estimate of tax liability over 77-day period made by extrapolating information based on gross proceeds from 5-day period); *Dodge* v. *Commissioner,* 981 F. 2d 350, 353–354 (CA8 1992) (upholding estimate using bank deposits by taxpayer); *Pollard* v. *Commissioner,* 786 F. 2d 1063, 1066 (CA11 1986) (upholding estimate using statistical tables reflecting cost of living where taxpayer lived); *Gerardo* v. *Commissioner,* 552 F. 2d 549, 551–552 (CA3 1977) (upholding estimate using extrapolation of income over 1-year period based on gross receipts from two days); *Mendelson* v. *Commissioner,* 305 F. 2d 519, 521–522 (CA7 1962) (upholding estimate of waitress' tip income based on restaurant's gross receipts and average tips earned by all wait-

resses employed by restaurant); *McQuatters* v. *Commissioner*, 32 TCM 1122 (1973), ¶ 73,240 P–H Memo TC (same).

Fior D'Italia does not challenge this basic principle of law. Rather, it seeks to explain why this principle should not apply here, or why it should not determine the outcome of this case in the Government's favor.

## A

Fior D'Italia's primary argument rests upon the statute that imposes the FICA tax. It points out that the tax law says there is "imposed on every employer" an "excise tax" calculated on the basis of "wages . . . paid by him" as those "wages" are "defined in" § 3121. §§ 3111(a), (b). It adds that the subsection of § 3121 which specifies that "wages" includes tips (subsection q) refers to "tips" as those "received by *an* employee in the course of *his* employment," *i. e.*, to tips received by each employee individually. (Emphasis added.) Fior D'Italia emphasizes § 3121(q)'s reference to the employee in the singular to conclude that the "employer's liability for FICA taxes therefore attaches to *each* of these individual payments, not when they are later summed and reported." Brief for Respondent 28 (emphasis in original).

In our view Fior D'Italia's linguistic argument makes too much out of too little. The language it finds key, the words "tips received by an employee," is contained in a definitional section, § 3121(q), not in the sections that impose the tax, §§ 3111(a), (b). The definitional section speaks in the singular. It says that an employee's (singular) tips "shall be considered remuneration" for purposes of the latter, tax imposing sections. § 3121(q). But the latter operational sections speak in the plural. They impose on employers a FICA tax calculated as a percentage of the "wages" (plural) paid to "individuals" (plural) by the employer "with respect to employment." §§ 3111(a), (b). The operational sections consequently impose liability for the *totality* of the "wages" that the employer pays, which totality of "wages," says the defi-

nitional section, shall include the tips that each individual employee earns. It is as if a tax were imposed on "all of a restaurant's dishes," with a definitional section specifying that "dishes" shall "include each customer's silverware." We simply do not see how this kind of language, taken as a whole, argues against use of an aggregate estimation method that seeks to determine the restaurant's total FICA tax liability.

## B

The Ninth Circuit relied in part upon two other statutory provisions. The first, 26 U. S. C. § 446(b), has been interpreted to authorize the IRS to use methods of estimation for determining *income* tax liability. See, *e. g., Mendelson, supra,* at 521–522 (authorizing estimate of waitress' gross receipts). The court felt this provision negatively implies a lack of IRS authority to use the aggregate estimation method in respect to other taxes, such as employer FICA taxes, where no such provision applies. 242 F. 3d, at 849. The second, 26 U. S. C. § 6205(a)(1), authorizes the Secretary to adopt regulations that prescribe mechanisms for employers to adjust FICA tax liability. The court felt this provision negatively implies a lack of IRS authority to use an aggregate estimation method in the absence of a regulation. 242 F. 3d, at 851.

After examining the statutes, however, we cannot find any negative implication. The first says that, where a taxpayer has used "a method of accounting" that "does not clearly reflect income," or has used "no method of accounting" at all, "the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." § 446(b). This provision applies to only one corner of income tax law, and even within that corner it says nothing about any particular method of calculation. To read it negatively would significantly limit IRS authority in that respect both within and outside the field of income tax law.

And there is simply no reason to believe that Congress intended any such limitation.

Section 6205(a)(1) refers to certain employment taxes, including FICA taxes, and says that when an employer initially pays "less than the correct amount of tax," then "proper adjustments . . . shall be made, without interest," in accordance with "regulations." The IRS has made clear that this provision refers to an employer's "adjustments," say, in an initially underreported tax liability, made *before* the IRS has assessed an underpayment. See generally 26 CFR § 31.6205–1 (2001). Again, there is simply no reason to believe that Congress, in writing this provision applicable to a small corner of tax law, intended, through negative implication, to limit the IRS' general power to assess tax deficiencies. Indeed, Fior D'Italia has not advanced in this Court either "negative implication" argument relied on by the Ninth Circuit.

## C

Fior D'Italia next points to several features of an "aggregate" estimate that, in its view, make it "unreasonable" (and therefore contrary to law) for the IRS to use that method. First, it notes that an aggregate estimate will sometimes include tips that should not count in calculating the FICA tax the employer owes. The law excludes an employee's tips from the FICA wages base insofar as those tips amount to less than $20 in a month. 26 U. S. C. § 3121(a)(12)(B). It also excludes the portion of tips and other wages (including fixed salary) an employee receives that rises above a certain annual level—$53,400 in 1991 and $55,500 in 1992. § 3121(a)(1); 242 F. 3d, at 846, n. 4. These ceilings mean that if a waiter earns, say, $36,000 in fixed salary, reports $20,000 in tips, and fails to report $10,000 in tips, the restaurant would *not* owe additional taxes, because the waiter's reported income ($56,000) already exceeds the FICA ceiling. But if that waiter earns $36,000 in fixed salary, reports $10,000 in tips, and fails to report another $10,000 in tips,

the restaurant *would* owe additional taxes on the unreported amount, because the waiter's reported income of $46,000 falls below the FICA ceiling.

Second, Fior D'Italia points out that an aggregate calculation based on credit card slips can overstate the aggregate amount of tips because it fails to account for the possibilities that: (1) customers who pay cash tend to leave a lower percentage of the bill as a tip; (2) some customers "stiff" the waiter, leaving no tip at all; (3) some customers write a high tip on the credit card slip, but ask for some cash back, leaving a net lower amount; and (4) some restaurants deduct the credit card company fee from the tip, leaving the employees with a lower net amount.

Fior D'Italia adds that these potential errors can make an enormous difference to a restaurant, for restaurant profits are often low, while the tax is high. Brief for Respondent 9–10, n. 6 (asserting that an assessment for unreported tips for all years since employer FICA tax provision was enacted would amount to two years' total profits). Indeed, the restaurant must pay this tax on the basis of amounts that the restaurant itself cannot control, for the restaurant's customers, not the restaurant itself, determine the level of tips. Fior D'Italia concludes that the IRS should avoid these problems by resting its assessment upon individual calculations of employee tip earnings, and argues that the IRS' failure to do so will always result in an overstatement of tax liability, rendering any assessment that results from aggregate estimates unreasonable and outside the limits of any delegated IRS authority.

In our view, these considerations do not show that the IRS' aggregate estimating method falls outside the bounds of what is reasonable. It bears repeating that in this litigation, Fior D'Italia stipulated that it would not challenge the particular IRS calculation as inaccurate. Absent such a stipulation, a taxpayer would remain free to present evidence that an assessment is inaccurate in a particular case. And we do

not accept Fior D'Italia's claim that restaurants are unable to do so—that they "simply do not have the information to dispute" the IRS assessment. Tr. of Oral Arg. 36. Why does a restaurant owner not know, or why is that owner unable to find out: how many busboys or other personnel work for only a day or two—thereby likely earning less than $20 in tips; how many employees were likely to have earned more than $55,000 or so in 1992; how much less cash-paying customers tip; how often they "stiff" waiters or ask for a cash refund; and whether the restaurant owner deducts a credit card charge of, say 3%, from employee tips? After all, the restaurant need not prove these matters with precision. It need only demonstrate that use of the aggregate method in the particular case has likely produced an inaccurate result. And in doing so, it may well be able to convince a judge to insist upon a more accurate formula. See, e. g., *Erickson*, 937 F. 2d, at 1551 ("*Some* reasonable foundation for the assessment is necessary to preserve the presumption of correctness" (emphasis in original)).

Nor has Fior D'Italia convinced us that individualized employee assessments will inevitably lead to a more "reasonable" assessment of employer liability than an aggregate estimate. After all, individual audits will be plagued by some of the same inaccuracies Fior D'Italia attributes to the aggregate estimation method, because they are, of course, *based on estimates themselves.* See, e. g., *Mendelson*, 305 F. 2d, at 521–522; *McQuatters* v. *Commissioner*, 32 TCM 1122 (1973), ¶ 73,240 P–H Memo TC. Consequently, we cannot find that the aggregate method is, as a general matter, so unreasonable as to violate the law.

## D

Fior D'Italia also mentions an IRS regulation that it believes creates a special problem of fairness when taken together with the "aggregate" assessment method. That regulation says that an employer, when calculating its FICA

tax, must "include wages received by an employee in the form of tips *only to the extent of the tips reported . . . to the employer.*" 26 CFR §31.6011(a)–1(a) (2001) (emphasis added). How, then, asks Fior D'Italia, could the employer have calculated tax on a different amount, namely: (1) the amount of tips "reported"; plus (2) the amount of tips *received but not reported?* Indeed, Fior D'Italia itself did not do so initially, presumably because this regulation said it should not do so. See Brief for Respondent 16–17. And, if it should not do so, is it not seriously unfair for the IRS later to assess against it a tax deficiency based on this latter figure? "[T]here is no practical or legally authorized way," Fior D'Italia complains, for the restaurant to include the additional amount of tips for which the IRS might later seek tax payment. *Id.,* at 16.

The statute itself, however, responds to this concern. It says that, insofar as tips were received but not reported to the employer, *that* remuneration (*i. e.,* the unreported tips) shall not be deemed to have been paid by the employer until "the date on which notice and demand for such taxes is made to the employer by the Secretary." 26 U. S. C. §3121(q). This provision makes clear that it is not unfair or illegal to assess a tax deficiency on the unreported tips, for penalties will not attach and interest will not accrue unless the IRS actually demands the money *and* the restaurant refuses subsequently to pay the amount demanded in a timely fashion. See generally Rev. Rul. 95–7, 1995–4 I. R. B. 44. Indeed, the statute (and its accompanying Revenue Ruling) contemplates both a restaurant that does not police employee tip reporting and a later assessment based on unreported tips. It makes clear that, at most, such a restaurant would have to create a reserve for potential later tax liability. Although the reporting scheme may place restaurants in an awkward position, the Tax Code seems to contemplate that position; and its bookkeeping awkwardness consequently fails to support the argument that aggregate estimation is unlawful.

## E

Finally, Fior D'Italia suggests that the IRS is putting its "aggregate estimate" method to improper use. It traces a lengthy history of disagreement among restaurant workers, restaurant owners, and the IRS as to how best to enforce the restaurants' legal obligation to pay FICA taxes on unreported tip income. It notes that the IRS has agreed to create a special program, called the "Tip Reporting Alternative Commitment," whereby a restaurant promises to establish accurate tip reporting procedures in return for an IRS promise to base FICA tax liability on reported tips alone. It adds that any coercion used to force a restaurant to enter such a program (often unpopular with employees) would conflict with the views of Members of Congress and IRS officials, who have said that a restaurant should not be held responsible for its employees' failure to report all their tips as income. See, e. g., Letter of Members of Congress to Secretary of Treasury Lloyd Bentsen, 32 Tax Analysts' Daily Tax Highlights & Documents 3913 (Mar. 4, 1994); App. 106, 107. It adds that Congress has enacted this view into two special laws: the first of which gives restaurants a nonrefundable tax credit on FICA taxes paid, i. e., permits restaurants to offset any FICA it pays on employee tips on a dollar for dollar basis against its own income tax liability, 26 U. S. C. § 45B; and the second of which prohibits the IRS from "threaten[ing] to audit" a restaurant in order to "coerce" it into entering the special tip-reporting program. Internal Revenue Service Restructuring and Reform Act of 1998, 112 Stat. 755.

Fior D'Italia says that the IRS' recent use of an "aggregate estimate" approach runs contrary to the understanding that underlies this second statute, for it "effectively forces the employer into . . . verifying, investigating, monitoring, and policing compliance by its employees—responsibilities which Congress and the Courts have considered, evaluated, and steadfastly refused to transfer from IRS to the em-

ployer." Brief for Respondent 9. And it suggests that the IRS intends to use a legal victory here as a "threat," say, to reopen back tax years, in order to require restaurant owners "to force" their "employees to report" all tips. *Id.*, at 14. Why else, asks Fior D'Italia, would the IRS bring this case? After all, given the dollar for dollar FICA/income tax setoff, this case may not even produce revenue for the Government.

Fior D'Italia's "abuse of power" argument, however, does not constitute a ground for holding unlawful the IRS' use of aggregate estimates. Even if we assume, for argument's sake, that an improper motive could render unlawful the use of a statutorily permissible enforcement method in certain circumstances, cf. *United States* v. *Powell,* 379 U. S. 48, 58 (1964), we note that Fior D'Italia has not demonstrated that the IRS has acted illegally *in this case.* Instead it has presented a general claim to the effect that the aggregate estimation method lends itself to abusive agency action. But we cannot find agency action unreasonable in all cases simply because of a general *possibility* of abuse—a possibility that exists in respect to many discretionary enforcement powers. Cf. *Heckler* v. *Chaney,* 470 U. S. 821, 831 (1985).

The statutes and congressional documents that protect restaurants from onerous monitoring requirements consequently do not support Fior D'Italia's argument that aggregate estimates are statutorily prohibited. For example, the Internal Revenue Service Restructuring and Reform Act prohibits the IRS from "threaten[ing] to audit" restaurants as a means to "coerce" them into policing employee tip reporting, *supra,* at 250, but Fior D'Italia does not claim that the IRS has violated this statute. Nor, for that matter, has Fior D'Italia presented evidence that this particular litigation would fail to yield revenue to the Government (due to the availability of the FICA tax credit), or convincingly explained, even if so, why that fact, while making the case unremunerative, would automatically make it improper. And while other documents show that Congress has expressed

concern regarding a restaurant's difficulty in trying to supervise its employees' reporting of their tips, they do not suggest that the aggregate estimate method is an unreasonable way of ascertaining unpaid FICA taxes for which the employer is indisputably liable (particularly when one recalls that the taxpayer generally remains free to challenge the accuracy of the calculation at issue, even though this taxpayer has waived its right to do so). Rather, as we have shown, the relevant Code provisions and case law support the use of aggregate estimates. See *supra,* at 242–244, 248–249.

We conclude that Fior D'Italia's discussion of IRS "abuse" is insufficient to show that the agency's use of aggregate estimates is prohibited by law. In saying this, we recognize that Fior D'Italia remains free to make its policy-related arguments to Congress.

## III

For these reasons, and because Fior D'Italia has stipulated that it does not challenge the accuracy of the IRS assessment in this case, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE SOUTER, with whom JUSTICE SCALIA and JUSTICE THOMAS join, dissenting.

The Court holds that the Internal Revenue Service's statutory authorization to make assessments for unpaid taxes is reasonably read to cover a restaurateur's FICA taxes based on an aggregate estimate of all unreported employee tips. I believe that reading the statute so broadly saddles employers with a burden unintended by Congress, and I respectfully dissent.

## I

Taxes on earned income imposed by the Federal Insurance Contributions Act (FICA) pay for employees' benefits under the Social Security Act, 49 Stat. 622, as amended, 42 U. S. C.

§ 401 *et seq.* (1994 ed. and Supp. V). In the simplest case, the employee is taxed on what he receives, and the employer is taxed on what he pays. See 26 U. S. C. §§ 3101, 3111. For a long time, an employee's income from tips was not recognized as remuneration paid by the employer, and the corresponding FICA tax was imposed only on the employee. See Social Security Amendments of 1965, § 313(c), 79 Stat. 382. In 1987, however, the Internal Revenue Code was amended to treat tip income within the remuneration on which the employer, too, is taxed, 26 U. S. C. § 3121(q), and that is the present law.

The scheme is simple. The tips are includible in the employee's wages. The employee must report the amount of taxable tip income to the employer. § 6053(a). "[L]arge food or beverage establishment[s]" must pass on that information to the Internal Revenue Service, § 6053(c)(1), and must also report the total amount of tips shown on credit card slips, *ibid.* The employer is subject to tax on the same amount of tip income listed on an employee's report to him and in turn reported by him to the IRS. For both the employer and the employee, however, taxable tip income is limited to income within what is known as the "wage band"; there is no tax on tips that amount to less than $20 in a given month, or on total remuneration in excess of the Social Security wage base ($53,400 and $55,500, respectively, in the years relevant to this case).

Because many employees report less tip income than they receive, their FICA taxes and their employers' matching amounts are less than they would be in a world of complete reporting. The IRS has chosen to counter dishonesty on the part of restaurant employees not by moving directly against them, but by going against their employers with assessments of unpaid FICA taxes based on an estimate of all tip income paid to all employees aggregated together. The Court finds these aggregated assessments authorized by the general provision for assessments of unpaid taxes, § 6201, which benefits

the Government with a presumption of correctness. See *United States* v. *Janis*, 428 U. S. 433, 440 (1976).[1] The practice of assessing FICA taxes against an employer on estimated aggregate tip income, however, raises anomaly after anomaly, to the point that one has to suspect that the Government's practice is wrong. An appreciation of these consequences, in fact, calls for a reading of the crucial provision, 26 U. S. C. § 3121(q), in a straightforward way, which bars aggregate assessments and the anomalies that go with them.

## II

### A

The Social Security scheme of benefits and the FICA tax funding it have been characterized as a kind of "social insurance," *Flemming* v. *Nestor*, 363 U. S. 603, 609 (1960), in which employers and employees contribute matching amounts. Compare 26 U. S. C. § 3101 with § 3111. The payments that beneficiaries are entitled to receive are determined by the records of their wages earned. *Nestor, supra,* at 608.

Notwithstanding this basic structure, the IRS's aggregate estimation method creates a disjunction between amounts presumptively owed by an employer and those owed by an employee. It creates a comparable disproportion between the employer's tax and the employee's ultimate benefits, since an aggregate assessment does nothing to revise the earnings records of the individual employees for whose benefit the taxes are purportedly collected.[2] Thus, from the outset, the aggregate assessment fits poorly with the design of the system.

---

[1] In 1998, Congress altered the burdens of proof for tax cases, but the changes do not implicate FICA. See 26 U. S. C. § 7491(a).

[2] Although the scheme does not create a vested right to benefits in any employee, see *Flemming* v. *Nestor*, 363 U. S. 603, 608–611 (1960), the legislative choice to tie benefits to earnings history evinces a general intent to create a rough parity between taxes paid and benefits received.

## B

As the majority acknowledges, the next problem is that the aggregate estimation necessarily requires the use of generalized assumptions for calculating such estimates, and the assumptions actually used tend to inflate liability. In the first place, while the IRS's assumption that many employees are underreporting is indisputably sound, the assumption that every patron is not only tipping, but tipping 14.49% in 1991 and 14.29% in 1992, is probably not. Those percentages are based on two further assumptions: that patrons who pay with credit cards tip at the same rate as patrons who pay in cash, and that all patrons use the tip line of the credit card slip for tips, rather than to obtain cash. But what is most significant is that the IRS's method of aggregate estimation ignores the wage band entirely, assuming that all tips are subject to FICA tax, although this is not true in law, and certainly not always the case in fact.

## C

The tendency of the Government's aggregation method to overestimate liability might not count much against it if it were fair to expect employers to keep the reports that would carry their burden to refute any contested assessment based on an aggregate estimate. But it is not fair.

Obviously, the only way an employer can refute probable inflation by estimate is to keep track of every employee's tips, *ante*, at 248, and at first blush, there might seem nothing unusual about expecting employers to do this.[3] The Code

---

[3] Of course, even the IRS has not explained the precise manner in which the employer is expected to generate such records. Before the Court of Appeals, the IRS argued that the employer could require employees to pool all tips, and thereby keep track of them. See 242 F. 3d 844, 848, n. 6 (CA9 2001). The court properly rejected this contention as "alter[ing] the way a restaurant does business . . . . It would be akin to saying that a restaurant must charge a fixed service charge in lieu of tips." *Ibid.* Before this Court, the IRS instead argued that "every employer should

imposes a general obligation upon all taxpayers to keep records relevant to their liability according to regulations promulgated by the Secretary, 26 U. S. C. § 6001, and, for the most part, the courts have viewed the burden on taxpayers to maintain such records as reasonable and, hence, as the justification for requiring taxpayers to disprove IRS estimates; the taxpayer who fails to attend to § 6001 has only himself to blame. See, e. g., *Kikalos* v. *Commissioner*, 190 F. 3d 791, 792, n. 1 (CA7 1999); *Cracchiola* v. *Commissioner*, 643 F. 2d 1383, 1385 (CA9 1981); *Meneguzzo* v. *Commissioner*, 43 T. C. 824, 831 (1965).[4] But the first blush ignores the one feature of § 6001 relevant here. The provision states a single, glaring exception: employers need not keep records "in connection with charged tips" other than "charge receipts, records necessary to comply with section 6053(c), and copies of statements furnished by employees under section 6053(a)." *Ibid.* Employers are expressly excused from any effort to determine whether employees are properly reporting their tips; the Code tells them that they need not keep the information specific to each employee that would be necessary to determine if any tips fell short of the estimates or outside the wage band.[5] Presumably because of this statu-

---

hire reliable people who they can trust to follow the rules." The official transcript records "Laughter." Tr. of Oral Arg. 27.

[4] Such is in keeping with the general rule that burdens shift to those with peculiar knowledge of the relevant facts. *Campbell* v. *United States*, 365 U. S. 85, 96 (1961) ("[T]he ordinary rule . . . does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary"); *National Communications Assn.* v. *AT&T Corp.*, 238 F. 3d 124, 130 (CA2 2001) ("[A]ll else being equal, the burden is better placed on the party with easier access to relevant information"); 9 J. Wigmore, Evidence § 2486, p. 290 (J. Chadbourn rev. ed. 1981) ("[T]he burden of proving a fact is said to be put on the party who presumably has peculiar means of knowledge" (emphasis deleted)).

[5] The statute refers only to charged tips, rather than cash tips, but the IRS does not dispute that the employer has no obligation to keep any records beyond those specifically required under 26 U. S. C. § 6053, and the IRS's regulations on the subject do not impose any requirements with

tory exception, the Secretary's regulations regarding employer recordkeeping do not impose any obligations beyond those mentioned in § 6001. See 26 CFR § 31.6001–5 (2001) (describing required records). This absolution from recordkeeping is mirrored by the fact that tips are uniquely excepted from the general rule that remuneration must be reported in W–2 statements. See 26 U. S. C. § 6041(e). The upshot is that Congress has enacted a singular exception to the duty to keep records that would allow any ready wage band determinations or other checks on estimates, while the aggregate assessment practice of the IRS virtually reads the exception out of the Code.

The majority doubts that there is any practical difference between determining the liability of one employee, very possibly with an estimation similar to the one used here, and estimating the aggregate amount for an employer. *Ante*, at 248. But determinations limited to an individual employee will necessarily be more tailored, if only by taking the wage band into account. In fact, any such determination would occur in consequence of some audit of the employee, who would have an incentive to divulge information to contest the IRS's figures where possible, and generate the very paper trail an employer would need to contest liability while availing himself of the exception in § 6001.

## D

The strangeness of combining a statute excusing employers from recordkeeping with an administrative practice of

---

respect to cash tips. See 26 CFR § 31.6001–5 (2001). Moreover, it would be irrational to read 26 U. S. C. § 6001 to require an employer to keep detailed records only of cash tips, while, for example, being relieved of the burden to record which employees received which charged tips, or whether the tip space was used for something other than tips, or how employees allocated charged tips amongst themselves via the process of "tipping out" (sharing tips with supporting waitstaff who do not receive their own tips, such as bartenders and hosts).

making probably inflated assessments stands out even more starkly in light of the eccentric route the Government has to follow in a case like this in order to benefit from the presumption of correctness that an aggregate assessment carries. Under the general authorization to make assessments, 26 U. S. C. § 6201, on which the Government relies, any assessment is preceded by liability for taxes. § 6201(a) ("The Secretary is authorized . . . to make the inquiries, determinations, and assessments of all taxes . . . which have not been duly paid . . ."); *ante*, at 242 ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes"). After, but only after, assessment can the IRS take the further step of issuing notice and demand for the unpaid taxes assessed, § 6303, so as to authorize the IRS to levy upon the taxpayer's property, or impose liens, §§ 6321, 6331.

In the case of an employer's liability for FICA taxes on tips, however, this sequence cannot be followed if the employee does not report the tips to the employer in the first place, for it is the report, not the employee's receipt of the tips, that raises the employer's liability to pay the FICA tax. The employer may know from the credit slips that the employees' reports are egregiously inaccurate (wage band or no wage band), but the employer is still liable only on what the employee declares. In fact, the effect of § 6053(c) is such that employers cannot help but know when underreporting is severe, since they are required to give the IRS a summary of the amount of reported tips and the amount of charged tips. Nonetheless, the employer remains liable solely for taxes on the reported tips.[6]

---

[6] In fact, the obligation to report charged tips was imposed before employers had any FICA tax obligation beyond tips that substituted for minimum wage, and the reporting obligations of § 6053(c) were devised to assist the IRS in its collections efforts against employees, despite the IRS's use of it here as a basis for auditing Fior D'Italia.

Indeed, even if the employer, seeing a disparity, paid extra FICA taxes on the assumption that the employees had underreported tips, the extra payment would be treated as an overpayment. See Tr. of Oral Arg. 8; *Jones* v. *Liberty Glass Co.*, 332 U. S. 524, 531 (1947) (overpayment is "any payment in excess of that which is properly due"). The overall implication is that employers are meant to pay taxes based on specific information provided by others. As a practical matter, the tips themselves are not the true basis for liability; instead, it is an employee report that creates the obligation.

Some event must therefore trigger liability for taxes on unreported tips before the IRS can make the assessment, and this event turns out to be the notice and demand for which § 3121(q) makes special provision in such a case.[7] Only after notice and demand can the Government proceed to assessment under § 6201. Whereas the usual sequence is assessment, then notice and demand, see § 6303, here it is notice and demand, then assessment.

The IRS does not dispute this. It concedes that it does not rely upon § 6201 before issuing the notice, see Reply Brief for United States 15–16, but instead performs a "preassessment" estimate (for which, incidentally, no statutory authorization exists). Then it issues notice and (liability having now attached) uses the same estimate for the official assessment under § 6201.

Again, at first blush, it is tempting to say that the sequence of events may be unusual, but under the aggregate assessment practice the employer-taxpayer ends up in the same position he would have been in if he failed to pay FICA taxes on reported tips. But there are two very significant

---

[7] The majority takes note of this unusual scheme, but finds significance only in the fact that until notice issues (and liability arises), interest does not run. *Ante*, at 249. But to interpret the statute as nothing more than a method of preventing the running of interest avoids the significance of § 3121(q), because there is already a statute that prevents interest running on unpaid FICA taxes. § 6205(a)(1).

differences. It is true that the employer who is delinquent as to reported tips ends up subject to liability on the basis of third-party action (the employee's report) which assessment invests with a presumption of correctness, and which notice and demand then make a basis for possible liens and levies. But in that case the employer's liability, and exposure to collection mechanisms, is subject to the important safeguard of the employee's report. Whatever the employee may do, it will not be in his interest to report more tips than he received, exposing himself (and, incidentally, his employer) to extra taxation. But this safeguard is entirely lost to the employer, through no fault of his own, if the Government can make aggregate assessments. The innocent employer has few records and no protection derived from the employee's interest. Yet without any such protection he is, on the Government's theory, immediately liable for the consequences of notice and demand at the very instant liability arises.

The second difference goes to the authority for estimating liability. The IRS finds this authority implicit in § 6201, which authorizes assessments. *Ante,* at 243. In the usual case, the estimate is thus made in calculating the assessment, which occurs after the event that creates the liability being estimated and assessed. But in the case of the tips unreported by the employee, there would be no liability until notice and demand is made under § 3121(q), and it is consequently at this point that the estimate is required. The upshot is that the estimate has to occur before the statute claimed to authorize it, § 6201, is even applicable. That is, the IRS says it can estimate because it can assess, and it can assess because it can previously estimate. Reasoning this circular may warrant suspicion.

### E

There is one more source of suspicion. In 1993, Congress enacted an income tax credit for certain employers in the amount of FICA taxes paid on tips in excess of the minimum

wage.   26 U. S. C. § 45B.   The existence of the credit creates a peculiar scheme, for unless we are to assume that restaurateurs are constantly operating on the knife-edge of solvency, never able to use the credit (even with its 20-year carryforward, see § 39), the IRS has little reason to expect to gain much from the employer-taxpayer; the collection effort will probably result in no net benefit to the Government (except, perhaps, as an interest-free loan).[8]   And because, as noted, the aggregate method chosen by the IRS will not affect individual employees' wage-earning records, the estimates do not even play much of a bookkeeping role.   There is something suspect, then, in the IRS's insistence on conducting audits of employers, without corresponding audits of employees, for the purpose of collecting FICA taxes that will ultimately be refunded, that do not increase the accuracy of individual earnings records, and probably overestimate the true amount of taxable earnings.

In fact, the only real advantage to the IRS seems to be that the threat of audit, litigation, and immediate liability may well force employers to assume the job of monitoring their employees' tips to ensure accurate reporting.   But if that explanation for the Government's practice makes sense of it, it also flips the Government from the frying pan into the fire.   Congress has previously stymied every attempt the IRS has made to impose such a burden on employers. In the days when employers were responsible only for withholding the employee's share of the FICA tax, the IRS attempted to force employers to include tip income on W–2 forms; this effort was blocked when Congress modified 26 U. S. C. § 6041 to exclude tip income expressly from the W–2 requirements.   See Revenue Act of 1978, § 501(b), 92 Stat. 2878.   When the IRS interpreted the credit available under

---

[8] At oral argument, the Government contended that the payment of the FICA tax, coupled with the § 45B credit, benefited its accounting by permitting payments to be appropriately allocated between the Social Security trust fund and general revenue.   See Tr. of Oral Arg. 20–21.

§ 45B to apply only to tips reported by the employee pursuant to 26 U. S. C. § 6053(a), Congress overruled the IRS and clarified that the credit would apply to all FICA taxes paid on tips above those used to satisfy the employer's minimum wage obligations. See Small Business Job Protection Act of 1996, Pub. L. 104–188, § 1112(a), 110 Stat. 1759. Finally, when the IRS developed its Tip Reporting Alternative Commitment (TRAC) program, *ante*, at 250, Congress forbade the IRS from "threaten[ing] to audit any taxpayer in an attempt to coerce the taxpayer" into participating. Internal Revenue Service Restructuring and Reform Act of 1998, § 3414, 112 Stat. 755.[9] And although the use of a threatened aggregate estimate (after an audit) to induce monitoring of employee tips may not technically run afoul of that statute, it is difficult to imagine that Congress would allow the aggregation practice as a lever on employers, when it forbade the use of an audit for the same purpose.

---

[9] To some extent, the modification of the § 45B credit and TRAC may be taken as congressional awareness of the IRS's practice of making aggregate assessments. After all, there is no need to clarify that § 45B is available for taxes on unreported tips unless such taxes are, in fact, being paid, and the TRAC program itself depends on the existence of aggregate assessments, because the "carrot" offered to employers to encourage participation is the IRS's promise to refrain from such assessments.

With respect to § 45B, however, prior to Congress's modifications, the IRS regulations did not allow for the credit even when an individual employee was assessed and corresponding notice and demand issued to the employer. See 58 Fed. Reg. 68033 (1993) (temporary regulation § 1.45B–1T). Thus, Congress's clarification did not depend on the existence of aggregate assessments. As for TRAC, at the time that Congress prohibited the IRS from coercing participation, the IRS had actually halted the aggregate assessment practice. See Director, Office of Employment Tax Administration and Compliance, Memorandum for Regional Chief Compliance Officers (June 16, 1998), App. 106–107. Moreover, the simple (and realistic) answer is just that Congress did as asked; restaurateurs complained about a specific practice, *i. e.,* threatened audits, and Congress responded with a targeted statute.

## III

Consider an alternative. I have noted already that even the Government tacitly acknowledges the crucial role of § 3121(q), the source of its authority to issue notice and demand, without which there is no liability on the employer's part for FICA taxes on unreported tips and thus no possibility of assessment under § 6201. It makes sense, then, to understand the scope of authority to make the assessment as being limited by the scope of the authority to issue notice and demand, and it likewise makes sense to pay close attention to the text of that authorization.

The special provision in § 3121(q) for notice and demand against an employer says nothing and suggests nothing about aggregate assessments. It reads that when an employer was furnished "no statement including such tips" or was given an "inaccurate or incomplete" one, the remuneration in the form of "such tips" shall be treated as if paid on the date notice and demand is made to the employer. "[S]uch tips" are described as "tips received by an employee in the course of his employment." *Ibid.* Thus, by its terms, the statute provides for notice and demand for the tax on the tips of "an employee," not on the tips of "employees" or "all employees" aggregated together. And, of course, if notice and demand is limited to taxes on tips of "an employee," that is the end of aggregate estimates.

It is true that under the Dictionary Act, 1 U. S. C. § 1, a statutory provision in the singular may include the plural where that would work in the context. "[A]n employee" could cover "employees" and the notice and demand could cover tips received during "their employment," "unless the context indicates otherwise," *ibid.* But here the context does indicate otherwise. The anomalies I have pointed out occur when the singular "employee" in § 3121(q) is read to include the plural, which in turn is crucial to allowing aggregate notice, demand, and assessment; and it turns out that

reading the statute to refer only to a particular employee's tips and limiting notice, demand, and assessment accordingly, goes far to abridge the catalog of oddities that come with the Government's position.

First, sticking to the singular means that the employer will not be assessed more tax than the employee himself should pay; whether or not the employee is sued for a like amount, the respective liabilities of employer and employee will be restored to parity. And by keying the employer's liability to a particular employee, the near certainty of over-assessment will be replaced with a likelihood of an accurate assessment taking into consideration the wage band of taxability under FICA.

Second, the fact that the employer has exercised his express, statutory option to decline to keep tipping records on his work force will no longer place him at such an immediate disadvantage. It will be relatively easy to discover the basis for the tax calculation in a particular instance.

Third, if indeed the Government first establishes the employee's liability for unreported tips, notice and demand under § 3121(q) will then serve what on its face seems to be its obvious purpose, to provide the employer with reliable information, like the employee tip reports that similarly trigger liability, so that the employer will have no further need for keeping track of employee tips. Although this is not the time to decide whether the IRS must formally audit the employee's own tax liability first, there is at least one reason to think Congress assumed that it would. There is no statute of limitations on an employer's FICA tax liability for unreported tips (because the statute does not run until after liability attaches, and no time limits are imposed upon the issuance of the notice that triggers liability). But there is a statute of limitations for assessments against employees. 26 U. S. C. § 6501. Conditioning the employer's liability on a parallel obligation of the employee would in effect place a limitation period on the employer's exposure.

Finally, of course, the tension with Congress's admonition that the IRS not "threaten to audit any taxpayer in an attempt to coerce the taxpayer" into participating in TRAC, 112 Stat. 755, will be eliminated. If the employer is liable only after an individual employee's delinquency has been calculated, the use of mass assessments to force an employer, in self-defense, to institute TRAC will simply vanish.

Thus, the context establishes that a singular reading is the one that makes sense by eliminating the eccentricities entailed by the aggregate reading, some of which seem unfair to employer taxpayers. Of course, this means that the problem of underreporting tips will be harder to solve, but it seems clear that Congress did not mean to solve it by allowing the IRS to use its assessment power to shift the problem to employers. I would therefore affirm the judgment of the Ninth Circuit.