T.C. Memo. 2003-216

UNITED STATES TAX COURT

EDDIE LEE WILLIAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27662-91.                    Filed July 22, 2003.

Eddie Lee Williams, pro se.

<u>Elizabeth Downs</u>, for respondent.


MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge Daniel J. Dinan pursuant to the provisions of section

7443A(b)(4), in effect at the time the petition was filed in this

case, and Rules 180, 181, and 183.[1]  The Court agrees with and

_____

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code in effect during the years in issue and
                                        (continued...)

adopts the opinion of the Special Trial Judge, as set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

DINAN, <u>Special Trial Judge</u>:  For the taxable years 1989 and 1990, respondent determined deficiencies in petitioner's Federal income taxes of $37,806 and $2,579, section 6651(a)(1) additions to tax of $9,452 and $516, and section 6654(a) additions to tax of $2,557 and $170.

The issues for decision are:  (1) Whether petitioner received unreported income from cocaine sales in the amounts determined by respondent and, if so, whether this income is subject to Federal income taxation, and (2) whether petitioner is liable for the additions to tax for failure to file timely returns and for failure to make estimated income tax payments.

### Background

Some of the facts have been deemed stipulated pursuant to Rule 91(f) and are so found.  These stipulations of fact and the attached exhibits are incorporated herein by this reference.  On the date the petition was filed in this case petitioner resided in the Federal Correctional Institution at El Reno, Oklahoma.

During the years in issue, petitioner resided in Ardmore, Oklahoma and was married to Sherry L. Williams.  Petitioner filed

---

[1](...continued)
Rule references are to the Tax Court Rules of Practice and Procedure.

joint Federal income tax returns with his wife for the years 1986, 1987, and 1988, reporting gross income of $1,637, $6,798, and $2,068, respectively.  The gross income reported on these returns consisted solely of wages earned by petitioner's wife.  Petitioner's return for 1988 reflected zero income tax liability.

In February 1991, petitioner and several codefendants were indicted under Federal law on 27 counts of drug offenses and money laundering.  In June 1991, petitioner was convicted on 17 counts of the indictment and received a 30-year sentence of imprisonment.  Petitioner's conviction reflects that, during 1989 and through April 1990, petitioner managed a continuing criminal enterprise involving cocaine distribution, and that he received and spent the proceeds of that enterprise.  Petitioner kept no records of his income or expenses with respect to his purchase and sale of cocaine during the years in issue.

Petitioner did not file Federal income tax returns for taxable years 1989 and 1990.  After petitioner was convicted, he was issued a notice of jeopardy assessment followed by a statutory notice of deficiency for 1989 and 1990.  In the notice of deficiency, respondent determined petitioner's tax liabilities and deficiencies, based upon a filing status of married filing separately, as follows:

|                                     | 1989      | 1990     |
| ----------------------------------- | --------- | -------- |
| Unreported income                   | $111,991  | $11,747  |
| Personal exemption deduction        | (2,000)   | (2,050)  |
| Standard deduction                  | (2,600)   | (2,725)  |
| Self-employment income tax deduction| -0-       | (830)    |
| Taxable income                      | 107,391   | 6,142    |
|                                     |           |          |
| Income tax                          | 31,556    | 919      |
| Self-employment income tax          | 6,250     | 1,660    |
| Total tax liability (deficiency)    | 37,806    | 2,579    |

Respondent determined the total amounts of unreported income by analyzing petitioner's cash transactions during the years in issue. The notice of deficiency reflects the following reconstruction of petitioner's income:

|                          | 1989      | 1990    |
| ------------------------ | --------- | ------- |
| Cash bank deposits       | $64,166   | $6,415  |
| Cash wires               | 13,110    | 500     |
| Cashier's checks         | 820       | -0-     |
| Money orders             | 4,504     | 2,831   |
| Cash expenditures        |           |         |
| 1987 Hyundai             | 4,725     | -0-     |
| 1989 Hyundai             | 4,322     | -0-     |
| Refrigerator             | 1,606     | -0-     |
| Home improvements        | 5,900     | -0-     |
| Underground sprinkler    | 3,400     | -0-     |
| New sod                  | 2,600     | -0-     |
| Security system          | 3,637     | -0-     |
| Mercedes downpayment     | 13,000    | -0-     |
| Tennis bracelet          | 3,200     | -0-     |
| Attorney fees            | -0-       | 2,000   |
| Total cash transactions  | 124,990   | 11,746  |
| Less duplicated items    | (13,000)  | -0-     |
| Total income             | 111,990   | 11,746  |

In addition to the deficiencies, respondent determined that petitioner was liable for additions to tax under section 6651(a)(1) and section 6654(a). For both of the years in issue, respondent based his determination of petitioner's liability for the section 6654(a) addition to tax on a required annual payment of 90 percent of petitioner's current year tax liability as determined in the notice of deficiency.

<u>Discussion</u>

The first issue for decision is whether petitioner received unreported income from cocaine sales in the amounts determined by respondent and, if so, whether this income is subject to Federal income taxation.

Section 1 of the Internal Revenue Code imposes a Federal tax on the taxable income of every individual.  Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived."  This broad definition includes income obtained from illegal sources.  <u>James v. United States</u>, 366 U.S. 213, 218 (1961); sec. 1.61-14(a), Income Tax Regs.  Separately, section 1401 imposes a tax "on the self-employment income of every individual".  Self-employment income is defined generally as "net earnings from self-employment", which in turn means "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowable by this subtitle which are attributable to such trade or business".  Sec. 1402(a) and (b).  "Trade or business" as used in this context has been construed to encompass not only legal but also illegal business activities.  <u>Peyton v. Commissioner</u>, T.C. Memo. 2003-146.[2]

---

[2]  The provisions of secs. 1401 and 1402 differed significantly from 1989 to 1990.  We have reviewed respondent's calculations in both years and find them to be correct under the applicable provisions of the Code.  We note that the sec.

(continued...)

Taxpayers are required to maintain records sufficient to establish the amounts of income, deductions, and other items which underlie their Federal income tax liabilities. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. If a taxpayer fails to keep adequate records, the Commissioner may reconstruct the taxpayer's income by any method that is reasonable under the circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); see also United States v. Fior D'Italia, Inc., 536 U.S. 238, 243 (2002) (stating that the assessment authority of the IRS is not exceeded "when the IRS estimates an individual's tax liability--as long as the method used to make the estimate is a 'reasonable' one"). The reconstruction need not be exact, so long as it is reasonable and substantially correct. Petzoldt v. Commissioner, supra at 693; Meneguzzo v. Commissioner, 43 T.C. 824 (1965). The bank deposit and cash expenditure method is recognized as a reasonable method of reconstructing income. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978). This method is premised on the assumption that the taxpayer has disposed of unreported income by depositing part of it into bank accounts and by making cash expenditures of the other part.

---

[2](...continued)
164(f)(1) self-employment income tax deduction was not applicable in 1989. Social Security Amendments of 1983, Pub. L. 98-21, sec. 124(d)(2), 97 Stat. 91.

As a general rule, the taxpayer bears the burden of proving the Commissioner's determinations to be in error. Rule 142(a).[3] Certain courts have recognized a limited exception to the general rule where the notice of deficiency determines that the taxpayer failed to report income, particularly income derived from illegal activities. Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980); Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977). In such circumstances, the Commissioner must come forward with evidence establishing a minimal foundation, which may consist of evidence linking the taxpayer with an income-producing activity. Petzoldt v. Commissioner, supra at 689.

Because respondent has shown that petitioner was convicted of the illegal distribution of cocaine, and that petitioner received and spent proceeds from the sale thereof, respondent has linked petitioner to the relevant income-producing activity. Respondent provided this Court with summary documents evidencing the various cash deposits and expenditures underlying his determination of the amounts of unreported income. These summaries generally were produced by respondent during the criminal investigation and prosecution of petitioner. Although

---

[3] Sec. 7491, which shifts the burden of production and/or proof under certain circumstances, does not apply in the present case because the underlying examination commenced prior to July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

not all of the supporting documents are in the record, nothing in the record calls into question the accuracy of these summaries. Petitioner himself does not dispute their accuracy. In petitioner's Objections to Respondent's Stipulations, he summarizes his position in this case, stating that he

> does not contest that he received the amount of * * * money of $111,991.00 and $11,747.00 for the years of 1989 and 1990. Petitioner does object to these amounts being described as taxable income and subject to tax penalties under IRC 6651(a)(1) and 6654 * * * . Also Petitioner * * * from 1980 to 1986 * * * took out large cash advancements from numerous credit card accounts, which totaled in excess of $250,000 * * * . Additionally, Petitioner will show this Court and the Respondent that he can produce documentation (Credit Card Information), that will make up the difference of $76,769.24, to balance out the total amount of $123,738, that the Respondent claims is earned and or gross income that is subject to taxation, but that the Petitioner rebutts [sic] as being income at all and not subject to taxation by the Internal Revenue. That said claim by the respondent is arbitrary and exaggerated in that said monies were not derived from any type of income that could be subject to any tax by the federal government.

Petitioner's testimony at trial in support of this argument can be summarized as follows: The cash petitioner used for the majority of the various deposits and expenditures during the years in issue was obtained through credit card cash advances. Petitioner obtained these advances in or before 1986; he then gave the cash to his father, who kept it in a suitcase in the trunk of a car in his backyard. Petitioner retrieved the cash from his father in 1987, but held onto it until the years in issue when he began making periodic cash deposits of varying amounts into several different checking accounts. Petitioner

kept the cash through this period of time despite attempts by credit card issuers to collect from him on outstanding debts.

Our evaluation of petitioner's testimony is founded upon "the ultimate task of a trier of the facts--the distillation of truth from falsehood which is the daily grist of judicial life." Diaz v. Commissioner, 58 T.C. 560, 564 (1972); see also Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We do not find to be credible petitioner's uncorroborated testimony concerning the credit card cash advances. We find it unlikely that petitioner was able to secure such large cash advances, that petitioner with the help of his father then hoarded these cash advances for several years, and that petitioner then began depositing this money in small amounts into bank accounts.

We find that petitioner did not have a cash hoard prior to the years in issue, and that he instead was using proceeds from the drug sales to make the cash expenditures and cash bank deposits in question. Accordingly, we sustain respondent's determination that petitioner received unreported income in the amounts reflected in the notice of deficiency, income which is includable in petitioner's gross income and subject to Federal income taxation under sections 1 and 1401.[4]

---

[4] Petitioner has cited various statutes and cases in support of his contention that the income at issue is not taxable. We need not address these arguments in detail. Respondent's determinations are in accordance with the law, as discussed above, and the law cited by petitioner is not applicable to the case at hand.

The second issue for decision is whether petitioner is liable for the additions to tax for failure to file timely returns and for failure to make estimated income tax payments.

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return. This addition to tax equals 5 percent of the amount required to be shown as tax on the return for each month, or fraction thereof, during which the failure to file continues, up to a maximum of 25 percent. A taxpayer may avoid this addition to tax if he establishes that the failure to file is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). "Reasonable cause" exists where a taxpayer is unable to file a return within the prescribed time despite the exercise of ordinary business care and prudence. United States v. Boyle, 469 U.S. 241, 246 (1985). "Willful neglect" means a conscious, intentional failure or reckless indifference. Id. at 245.

Petitioner did not file a return in either 1989 or 1990. Petitioner does not assert, and there is nothing in the record which indicates, that petitioner had reasonable cause for his failure to file the returns. Consequently, we sustain respondent's determination that petitioner is liable for the section 6651(a)(1) addition to tax for each year in issue.

Section 6654(a) provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax. As relevant here, each required installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (1) 90 percent

of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of the individual's tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return. Sec. 6654(d)(1)(A) and (B). There are two mechanical exceptions to the applicability of the section 6654(a) addition to tax. First, as relevant to this case, the addition is not applicable if the tax shown on the individual's return for the year in question (or, if no return is filed, the individual's tax for that year) is less than $500. Sec. 6654(e)(1). Second, the addition is not applicable if the individual's tax liability for the preceding taxable year was zero. Sec. 6654(e)(2).

Respondent's determination that petitioner underpaid his estimated taxes is based on petitioner's tax liability as determined in the statutory notice of deficiency. This determination is correct with respect to taxable year 1990 because petitioner did not file a return for taxable year 1989 or 1990. Sec. 6654(d)(1)(B). However, this determination is incorrect with respect to taxable year 1989. Petitioner and his wife filed a joint Federal income tax return for taxable year 1988 which reflected gross income of $2,068 and a tax liability of zero. Thus, because 100 percent of petitioner's 1988 tax liability as shown on his filed return was zero, petitioner was not required to make estimated tax payments for 1989. Sec. 6654(d)(1)(B)(ii).

Finally, we briefly address an issue raised by respondent at trial concerning the application of the statute of limitations on collections.  A period of limitations on collections begins when an assessment of tax has been made, including a jeopardy assessment, and generally runs for 10 years.  Sec. 6502(a)(1).  However, where a taxpayer petitions this Court in response to a statutory notice of deficiency, the period of limitations for collection of the deficiency is suspended until 60 days after the Court's decision becomes final.  Sec. 6503(a)(1).  Thus, the period of limitations on collections has not expired in this case.  See Estate of Iaconi v. Commissioner, T.C. Memo. 1961-106.

To reflect the foregoing,

Decision will be entered for respondent except with respect to the section 6654(a) addition to tax for 1989.